[L.A. No. 29947. In Bank. Jan. 5, 1973.]

MARSHALL H. SEVIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Ryan & Traxler, Sidney Traxler, Rich & Ezer and Mitchel J. Ezer for Petitioner.

F. LaMar Forshee, Ronald W. Stovitz and Christopher M. Reuss for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be disbarred from the practice of law.

*Facts:* In August 1967, petitioner was employed by Sam Reiter and William Schorin to settle a controversy with regard to a trust deed. In March 1968, pursuant to that employment, petitioner filed on his clients'

behalf an action to foreclose their security interest in the property. On February 20, 1969, the case went to trial, and petitioner's clients prevailed. Petitioner arranged with counsel for the judgment debtor, Bergquist Properties, the terms of payment and instructed that the check be made payable as follows: "Marshall H. Sevin, Trustee Account." Accordingly, on February 25, 1969, Bergquist's check for $16,966.36 was delivered to petitioner with a covering letter, specifying that the check should be deposited and held in petitioner's trust account until petitioner's delivery of a full satisfaction of judgment. The next day, petitioner endorsed and deposited the check in his trust account. Of this amount, $1,600 represented an award of attorney's fees; and the balance, $15,366.36, belonged to petitioner's clients, Reiter and Schorin.

Petitioner did not report receipt of this check to his clients. Between February 26 and May 29, 1969, petitioner wrote several checks on the deposited sum—either to himself or to his creditors—reducing it ultimately to a balance of $36.81. Meanwhile, petitioner's clients visited his office several times inquiring as to the status of their case, and each time petitioner advised them that the matter was proceeding in the usual course. In July and August 1969, they were unable to make any contact at all with petitioner; efforts to see him failed, and telephone calls were unanswered. Finally, on August 28, 1969, they reported the matter to the State Bar, expressing their desire to know the present status of their case. On September 11, 1969, the State Bar by letter advised petitioner of his clients' complaint. Petitioner did not reply; so the State Bar sent another letter to petitioner on September 29, 1969. In this second letter, petitioner was advised that if a statement was not forthcoming from him by October 14, 1969, the matter would be referred to a local administrative committee for investigation. Again petitioner did not reply.

Meanwhile, in early October 1969, because of their failure to reach petitioner, Reiter and Schorin requested another attorney to look into the matter. This attorney contacted counsel for Bergquist Properties, learned of the check of February 25, 1969, delivered to petitioner, and so reported to Reiter and Schorin on October 16, 1969. This was the first information that they had of the payment, a delay of almost eight months. On October 23, 1969, Reiter and Schorin met with petitioner. He then admitted his deposit of the settlement check in February 1969 and his subsequent use of the funds for his personal benefit. Petitioner then gave his clients a personal note calling for repayment by the end of the year, with the first installment of $5,000 due October 30, 1969. Petitioner inquired of his clients whether they had asked the attorney who had investigated the matter for them to report it to the State Bar. They responded that they had not;

and at petitioner's insistence on written substantiation, they obtained a letter from that attorney so advising petitioner. Meanwhile, counsel for Bergquist Properties began looking into the matter, wrote to petitioner asking for delivery of a satisfaction of judgment within five days (as petitioner had promised when he received the settlement check on February 25, 1969); and on October 31, 1969, petitioner sent a copy of the satisfaction, which he had filed the previous day.

On October 30, 1969, petitioner failed to pay his clients, Reiter and Schorin, the first installment on the note. On November 14, 1969, they went to petitioner's office, discussed the terms of repayment, settled on the total amount of $17,500, and agreed to return in three days for payment thereof. On November 17, 1969, when they returned to petitioner's office, petitioner showed them a draft in letter form of an agreement whereby they purported "to loan" to petitioner the moneys owing to them on their judgment. After a few minor corrections, the draft was typed in final form on petitioner's office stationery, addressed to his clients, predated to February 21, 1969, and signed by them. It provided for payment with 10 percent interest on or before August 31, 1969. At the same time, petitioner had his clients sign a letter addressed to the State Bar, dated November 17, 1969, stating that they had received full repayment of their loan to petitioner, had no further complaint against him, and would not appear at any hearings, and requesting any scheduled proceedings to be cancelled. After Reiter and Schorin signed both letters, petitioner endorsed to them a cashier's check for $17,500. On that same day, petitioner mailed to the State Bar his clients' letter repudiating their complaint against him. A couple of days later, the State Bar advised petitioner by letter that its preliminary hearing on his clients' complaint would be conducted as scheduled.

According to petitioner, his clients, Reiter and Schorin, were in his office on February 21, 1969; they agreed to a loan to him of the proceeds of their judgment; the draft was prepared; it was retyped in final form and signed by them. Petitioner's secretary testified that he dictated the loan agreement and she transcribed it "probably" the "day it was dated"; that she thought she saw the signed agreement in the office file of Reiter and Schorin "probably a few days or a few weeks, maybe" after February 21, 1969; but when questioned further as to whether she could remember seeing the agreement in the file before November 17, 1969, she was "not positive" and could not say "positively without a doubt" that it was there. Her testimony was taken on deposition, as she was then no longer in petitioner's employ and was living out of the state. The local administrative committee deemed her testimony "too uncertain and vague to be accepted

in the context of the substantial evidence in contradiction to [her] version of the facts."

Indisputably, the record shows: Petitioner's request that the judgment debtor make the settlement check payable solely to him; no endorsement of the check by his clients or their receipt of written notice or accounting from him; his deposit of the check on February 26, 1969, in his clients' trust account rather than in his personal account, as would have been likely if the proceeds represented a loan to him; his failure to make an entry in his trust account records reflecting that the money was his and not his clients'; his disbursement of the funds from the trust account over some three months by various checks payable to himself or to his creditors; complaint of his clients in August 1969 to the State Bar and their employment of an attorney in October 1969 to investigate the status of their case—actions inconsistent with any purported agreement to lend the settlement proceeds to petitioner; the State Bar's two letters in September 1969 sent to petitioner advising him of his clients' complaint; petitioner's failure to reply to either letter—if the purported loan agreement had in fact been executed and was then in petitioner's possession, his furnishing a copy thereof to the State Bar would have answered its inquiry; and, finally, petitioner's first notice to the State Bar of the existence of the so-called February 21st loan agreement occurred a few days after November 17, 1969, the date on which petitioner's clients testified that they signed the back-dated agreement.

Petitioner's clients, Reiter and Schorin, in their testimony admitted that when they signed the back-dated letter of February 21st, they knew the statements therein setting forth the loan arrangement with petitioner were false but petitioner "suggested" that they sign if they wanted their money from him. In short, they felt that they had no choice in the matter.

*Questions*: First: *Does the evidence sustain the finding of culpability on the part of petitioner?*

*Yes.* The burden is upon one seeking a review of a recommendation of the disciplinary board to show that its findings are not supported by the evidence or that its recommendation is erroneous or unlawful. (*Eschwig* v. *State Bar,* 1 Cal.3d 8, 15 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662].) In the present case, the record discloses that petitioner has not sustained this burden.

From all the evidence hereinabove recited, the conclusion is inescapable that petitioner deliberately fabricated the purported loan agreement to conceal his misappropriation of his clients' funds and to establish a premise for his withholding payment for some nine months after he had

received the moneys owing to them. The finding of culpability on the part of petitioner is not open to dispute.

Second: *Is the recommended degree of discipline appropriate under the circumstances?*

*Yes.* ■ The misappropriation of a client's funds, in the absence of clearly extenuating circumstances, warrants disbarment. (*Simmons* v. *State Bar,* 70 Cal.2d 361, 366 [74 P.2d 915, 450 P.2d 291].) Here, under the record, there are no clearly extenuating circumstances. Petitioner stresses the fact that he paid his clients $17,500, which was considerably more than was owing to them originally from the proceeds of the judgment. The additional amount covered interest for use of their money for nine months, plus the fee they were obligated to pay the attorney they employed to investigate the status of their case with petitioner. ■ However, restitution is no defense in a disciplinary hearing. The conduct of an attorney in making his client whole, as well as the timeliness and manner of restitution, may have a bearing on discipline; but where, as here, restitution is made under the pressure of a forthcoming State Bar disciplinary investigation, and there was no prior offer of repayment or accounting, it is entitled to no weight. (*Cutler* v. *State Bar,* 71 Cal.2d 241, 253-254 [78 Cal.Rptr. 172, 455 P.2d 108].)

■ Petitioner's misconduct involved moral turpitude, and under the circumstances disbarment is warranted even without consideration of his prior record. (See Bus. & Prof. Code, § 6106.) In the present proceeding, the board's recommendation of disbarment was made after consideration of petitioner's prior record. (Rule 29.1, Rules of Procedure of the State Bar, Bus. & Prof. Code, foll. § 6087.) That was a proceeding in 1969 involving similar misconduct, the commingling and conversion of a client's funds, and it resulted in petitioner's suspension for one month. (Bar Misc. 3191.) Such recently administered discipline apparently did not succeed in imparting to petitioner an understanding of the duties of an attorney to his clients and to the public. (*Alkow* v. *State Bar,* 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638].) Moreover, petitioner's misconduct here appears even more aggravated when related to his complete lack of candor in testifying before the local administrative committee and his deceitful action in attempting to forestall investigation by antedating and fabricating a loan agreement with his clients as explanation for failure to render a proper accounting. (Rule 9, Rules of Professional Conduct, Bus. & Prof. Code, foll. § 6076.) These combined circumstances of reprehensible conduct demonstrate that petitioner is not entitled to be recommended to the public as a person

worthy of trust, within the required professional standards, and he should not be allowed to continue to practice law.

It is therefore ordered that petitioner be disbarred and that his name be stricken from the roll of attorneys, effective 30 days from the filing of this opinion.

Petitioner's application for a rehearing was denied January 31, 1973.