[S.F. No. 23285. In Bank. Oct. 3, 1975.]

BYRON N. WELLS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Byron N. Wells, in pro. per., and Angelo T. Petarino for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law for one year on conditions of probation, including actual suspension for the first month. The board's recommendation is based on findings by a local administrative commit-

tee of the State Bar that petitioner commingled and misappropriated client's funds and thereafter deceived inquirers as to the existence of these funds.[1]

Petitioner was admitted to practice in California in 1967. He has no prior disciplinary record. In 1970, petitioner was employed by Bonnie Walbridge to represent her in an action for damages resulting from an automobile accident. Their agreement provided that petitioner's fee and witness' expenses were to be deducted from the recovery.

In November 1971, petitioner received a check for $902 as full satisfaction for the judgment, obtained his client's endorsement, and deposited it in his trustee account. The expenses of the sole witness were not at that time known.

On 6 December 1971, petitioner directed his secretary to draw a check on his trustee account for $900. By mistake, petitioner's secretary prepared a check for only $600. This check, containing the notation "Walbridge," was deposited the next day in petitioner's general office account, used for his business and/or personal use. Correcting her earlier mistake, petitioner's secretary prepared another check for $300. This check, also containing the notation "Walbridge," was deposited in petitioner's general office account on 20 December 1971. On 22 December 1971, after the $300 check cleared, petitioner's trustee account contained only $24.81, and by 17 January 1972, petitioner's general office account was overdrawn.

Petitioner accepted no responsibility for the commingling and misappropriation of the Walbridge funds. Rather, he sought to place blame on his secretary for her alleged failure to follow petitioner's instructions. Petitioner testified that he authorized his secretary to draw the $900 check payable to his general office account, to be held in an envelope marked "Walbridge proceeds" until an itemized expense statement was received from the witness, when the check could be deposited, with

---

[1]Petitioner was charged with violating former rule 9 of the Rules of Professional Conduct, now rule 8-101, providing in relevant part: "A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client. Unless the client otherwise directs in writing, he shall promptly deposit his client's funds in a bank or trust company, authorized to do business in the State of California, in a bank account separate from his own account and clearly designated as 'Clients' Funds Account' or 'Trust Funds Account,' or words of similar import. . . ." He was also charged with commission of acts involving moral turpitude or dishonesty. (Bus. & Prof. Code, § 6106.)

payment to the witness and the client. To justify this unusual handling of client's funds, petitioner said that since he was about to undergo surgery and since his secretary was authorized to sign checks on his general office account but not the trust account, his actions facilitated prompt payment to Walbridge. Petitioner testified that the deposits made in his general office account were without his actual knowledge and against his specific directive.

On various occasions after December 1971, petitioner represented that the Walbridge proceeds were in his possession when actually the proceeds did not exist. On 30 December 1971, petitioner responded to a prior letter from Walbridge advising her that he had been out of the state and that he doubted he could obtain the necessary itemized expense statement from the witness before his expected hospitalization due to a serious illness. Throughout the following months Walbridge repeatedly attempted unsuccessfully to contact petitioner, leaving numerous messages with his secretary. Later, Walbridge asked her uncle (Edwin Casey, an attorney) to investigate the matter. By telephone, petitioner told Casey that he already mailed a $704.31 check to Walbridge. However, this check was never received. Petitioner then promised to issue a new check but this check never arrived. Casey wrote petitioner on 17 March 1972, requesting that petitioner take care of this matter without further delay. Nothing happened. On 1 July 1972, Walbridge and her father visited petitioner at his office without an appointment. For the first time, petitioner admitted that the money was taken from his trustee account and subsequently spent. After their conversation, petitioner finally gave Walbridge a check for $794.65, including interest. When this check was deposited five days later, it was returned for insufficient funds. At last, on 2 August 1972, Walbridge received her money.

Petitioner initially contends that the evidence is insufficient to support the findings. "Although we are not bound by the findings of the State Bar and must exercise our independent judgment on the weight and sufficiency of the evidence [citations], the findings nevertheless are entitled to great weight and petitioner has the burden of showing, in support of his contention, that they are not supported by substantial evidence [citations]." (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 443-444 [113 Cal.Rptr. 602, 521 P.2d 858]; *Taylor* v. *State Bar* (1974) 11 Cal.3d 424, 429 [113 Cal.Rptr. 478, 521 P.2d 470].)

■ Petitioner concedes the commingling and misappropriation charges by only contesting the board's finding that he deceived inquirers.

He does not present one factual argument attacking the board's finding. Rather, in conclusory terms, petitioner contends "that he made all representations based on the information submitted to him and relied on by him and had no intent to deceive anyone." Clearly, petitioner makes no serious effort to meet his burden and we must therefore sustain the findings of the board—there being substantial evidence to support petitioner's culpability for misappropriation, commingling, and deceit.

Petitioner next contends that suspension from the practice of law is too severe, considering the delay in the proceedings, the absence of prior disciplinary action—and the lack of harm suffered by the client.

 It is well settled that an attorney's misappropriation of trust funds is a gross violation of general morality as well as professional ethics; and in addition, is likely to endanger the confidence of the public in the legal profession. (*Tardiff* v. *State Bar* (1971) 3 Cal.3d 903, 908 [92 Cal.Rptr. 301, 479 P.2d 661].) Further, this court has repeatedly stated that misappropriation of trust funds may warrant disbarment. (See, e.g., *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449].) Petitioner's commingling of trust funds by itself could warrant up to three years of actual suspension. (Bus. & Prof. Code, § 6077.)

 "The imposition of penalty does not issue from a fixed formula but from a balanced consideration of the relevant factors." (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) Here, petitioner's serious illness and major surgery at the time of his commingling and misappropriation of Walbridge's funds warrant attention.

It is ordered that petitioner be suspended from the practice of law for a period of one year, but that execution of the order be stayed and that he be placed on probation for the one-year period upon the conditions prescribed by the disciplinary board, except that the petitioner be actually suspended for the first three months of said one-year period. This order is effective forthwith.