[L.A. No. 32087. Mar. 20, 1986.]

WILLIAM HENRY WAYSMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

William Henry Waysman, in pro. per., and Theodore A. Cohen for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Gael T. Infande, Caryn Espo and Arthur Margolis for Respondent.

OPINION

**THE COURT.**—In this proceeding, we review the recommendation of the State Bar of California that petitioner William Waysman be suspended from the practice of law for six months, that execution of suspension be stayed, and that petitioner be placed on probation for one year on conditions which include no actual suspension but require, among other things, that he make restitution and abstain from alcohol.

Petitioner is charged with a single incident of misconduct: commingling and misappropriating $24,000 in client funds. He has no prior record of discipline. Petitioner was admitted to the practice of law in California in 1970 and currently maintains addresses in Beverly Hills and San Diego.

In 1984, the Review Department of the State Bar Court filed with this court an order approving a stipulation as to facts and discipline. In that stipulation with the State Bar examiner, petitioner admitted the underlying facts and charges against him and concurred in the recommended discipline. He did not file a petition for review until he was notified that we were considering imposing more serious sanctions than recommended. Petitioner does not now dispute any of the stipulated findings; rather, he urges this court to accept the discipline recommended by the review department in light of the substantial mitigating factors presented in the stipulation. Thus, the only issue before us is whether the recommended discipline is adequate.

FACTS

After 12 years of practicing law, petitioner William Waysman formed a two-attorney partnership in April 1982. Three weeks later petitioner's partner departed, leaving petitioner as sole attorney for the more than 150 lawsuits that had been assigned the partnership by its primary client, the David Janison Carlyle Corporation and its various subsidiaries and related companies.

One of the cases assigned involved the claim of subsidiary Environmental Investments against its insurance carrier. About May 27, 1982, the insurance carrier issued a draft in the amount of $24,000 payable to "William H. Waysman, Attorney for E & I and Continental Associates," in full settlement of the claim. Meanwhile, petitioner was out of town representing a client in a trial lasting several weeks. Petitioner telephoned his secretary to inform the client that the settlement draft had been issued and to secure the appropriate signature on the required release. Several days later he instructed the secretary to deposit the draft in his trust account. The secretary followed petitioner's directions and subsequently advised him the check

would not clear for three weeks. At petitioner's instruction, the secretary retrieved the draft and redeposited it into petitioner's law office account where it would clear in seven days.

Petitioner returned from the out-of-town trial to find his office in a financial disaster. The secretary had quit, having used a set of presigned checks from the office account to pay various expenses and salaries (including her own and that of her husband, a law clerk). Petitioner had himself incurred heavy expenses while in trial and had written other checks from the office account. Meanwhile, he had been involved in a series of complicated banking transactions which contributed considerable confusion as to the amount available in his office account. In any event, the entire $24,000 in client funds had been spent.

Petitioner immediately retained a certified public accountant to assist him in straightening out his financial affairs, but because he did not have funds to pay for this service, an audit was never completed. Thereafter, petitioner advised Environmental Investments that its settlement funds had been spent. Taking full responsibility, he informed them he would attempt to repay the $24,000 with his own funds. He began making restitution approximately five months later. In July 1983, petitioner executed a promissory note to Environmental Investments in the amount of $24,000 at a rate of 10 percent, due December 31, 1984, subject to a six-month extension.[1]

At the time of the "misappropriation," petitioner was dependent on alcohol, apparently a result of a bitter divorce in 1979. He had for several years been under the counseling of a psychiatrist, who now attributes petitioner's poor judgment in handling his client funds to his alcohol problem. Petitioner appears to have an extreme reaction to the consumption of even small amounts of alcohol which causes him to lose his sense of judgment and to become very confused.

In May 1983, proceedings against petitioner commenced when the State Bar issued a notice to show cause charging petitioner with commingling money from a client trust account with his office account, misappropriating those trust funds, and failure to keep adequate books and records regarding those same funds. In October 1983, petitioner and the State Bar examiner entered into a stipulation as to facts and discipline which provided, inter alia, that petitioner be suspended from the practice of law for one year, that execution of the suspension be stayed, and that petitioner be placed on probation for one full year subject to specific conditions, including that he make restitution of $24,000 and 10 percent per annum.

---

[1]Petitioner has subsequently made arrangements with Environmental Investments to satisfy all payments of principal and interest by June 1986.

In April 1984, the Review Department of the State Bar Court rejected the stipulation on the ground that the discipline "appears excessive in view of the stipulated facts," and that it "fails to set forth the time within which [petitioner] must make restitution."

In August 1984, the parties entered into a second stipulation which the review department subsequently approved. This time, the discipline included suspension from practice for six months, a stay of suspension, and probation for one year on specific conditions. The conditions during the probationary period included: that petitioner make full restitution by December 1984 (subject to a six-month extension) at the rate of 10 percent per annum; that petitioner be assigned a probation monitor referee; that he abstain from the use of intoxicants; that he remain enrolled in Alcoholics Anonymous and be an active member of the State Bar (or other) rehabilitation program for alcohol abuse; that he take and pass the Professional Responsibility Examination; that he comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California; and that he report quarterly to the State Bar and notify it of any change of address within 10 days.

Following the review department's approval of this second stipulation, the matter was forwarded to this court for review. We advised petitioner we were considering more severe sanctions; petitioner subsequently filed this petition for review.

### DISCUSSION

■ In a disciplinary proceeding against an attorney, this court has the final word as to the discipline to be imposed. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) It is our task to weigh and pass on the sufficiency of the evidence, to determine if the recommended discipline is appropriate, and if justified to impose more severe discipline than recommended. (*Glickman* v. *State Bar* (1973) 9 Cal.3d 179, 184 [107 Cal.Rptr. 65, 507 P.2d 953]; *Sturr* v. *State Bar* (1959) 52 Cal.2d 125, 127 [338 P.2d 897].) Ordinarily, this court attaches great weight to the disciplinary recommendations of the review department (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148]; *Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 206-207 [168 Cal.Rptr. 333, 617 P.2d 486]); however, we have occasionally imposed more severe sanctions where warranted. (*Martin* v. *State Bar* (1978) 20 Cal.3d 717, 723 [144 Cal.Rptr. 214, 575 P.2d 757]; *Lester* v. *State Bar* (1976) 17 Cal.3d 547, 552 [131 Cal.Rptr. 225, 551 P.2d 841]; *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 147 [117 Cal.Rptr. 821, 528 P.2d 1157].) In considering the imposition of stricter discipline, we may relieve the attorney from the binding effects of

the stipulation, but only as to legal conclusions. (*Rossman* v. *State Bar* (1985) 39 Cal.3d 539, 542 [216 Cal.Rptr. 919, 703 P.2d 390]; *Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].)

■ Misappropriation of a client's property constitutes a serious violation of professional ethics and of general morality, likely to endanger the public confidence in the legal profession. (*Yokozeki, supra,* 11 Cal.3d at p. 450; *Wells* v. *State Bar* (1975) 15 Cal.3d 367, 371 [124 Cal.Rptr. 218, 540 P.2d 58].) This court has repeatedly stated that where an attorney misappropriates trust funds, disbarment may be appropriate. (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 87 [141 Cal.Rptr. 169, 569 P.2d 763]; *Wells, supra,* 15 Cal.3d at p. 371; *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449].) In the absence of clearly extenuating circumstances, this offense warrants severe discipline. (See *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 387-388 [96 Cal.Rptr. 30, 486 P.2d 1230].)

■ There is no fixed formula in deciding appropriate discipline. (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) Rather, this court must consider all relevant aggravating and mitigating circumstances. (*Warner, supra,* 34 Cal.3d at p. 43.) ■ We now examine the mitigating circumstances set forth in the stipulation.

Petitioner has no prior record of discipline. As we noted in *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, footnote 10 [202 Cal.Rptr. 349, 680 P.2d 82], "The absence of a prior disciplinary record is in itself an important mitigating circumstance." It is particularly a strong mitigating factor in this case, given petitioner's substantial years of practice. (See *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].)

The stipulated facts indicate petitioner had developed serious alcohol-related problems, apparently as a result of a difficult divorce. "In our consideration of the nature of a disciplinary offense we are not insensitive to the personal and professional problems that frequently besiege the practitioner, including the all too frequent devastating impact of alcohol abuse. Nor have we been unmindful of the frequent successes of personal effort, restoration and human rehabilitation." (*Tenner, supra,* 28 Cal.3d at p. 207.) Four months following the incident and well before the commencement of disciplinary proceedings, petitioner acknowledged his alcoholism, gave up alcohol consumption, and began attending Alcoholics Anonymous meetings several times weekly. Petitioner subsequently contacted the State Bar Committee on Alcoholism of his own accord and has made periodic reports to that committee. At some point petitioner began volunteering two half-days per week at two organizations that aid recovering alcoholics. His personal efforts in attempting to rehabilitate himself have been significant.

This court has consistently considered restitution of misappropriated property in determining the degree of discipline to impose on an attorney. (See *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47]; *Yokozeki, supra,* 11 Cal.3d at p. 450; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337]; *Benson, supra,* 5 Cal.3d at p. 388.) Petitioner began making restitution approximately five months after the misappropriation and has continued to make monthly payments. To date, he has paid $16,500 in restitution.

An attorney's behavior at the time of the offense and during the subsequent investigation also influences our decision in setting an appropriate discipline (*Bradpiece, supra,* 10 Cal.3d at p. 748; *In re Higbie* (1972) 6 Cal.3d 562, 574 [99 Cal.Rptr. 865, 493 P.2d 97].) Petitioner immediately notified his client of the misappropriation and assumed responsibility for it. Throughout the disciplinary proceedings he has cooperated fully, acknowledging his culpability and displaying remorse.

Finally, and importantly, we note that while petitioner's conduct certainly cannot be condoned, he appears to have acted without any intent to defraud his client. Although he "misappropriated" the client funds in the sense that he wrongfully misused that money for his own office expenses, the stipulation and facts strongly suggest that it is likely that petitioner was simply negligent in supervising his office and financial affairs.

Petitioner argues that in light of the significant mitigating factors the recommended discipline is appropriate. We agree. In *Palomo* v. *State Bar* (1984) 36 Cal.3d 785 [205 Cal.Rptr. 834, 685 P.2d 1185], we accepted a one-year stayed suspension for an attorney who simulated his client's signature on an estate distribution check, deposited it in his own payroll account, and subsequently spent it. As in the present case, we found the attorney had no specific intent to defraud the client but that he had been lax in his financial procedures. Given the factual similarities of the two cases, a similar discipline is in order. Unlike the petitioner, however, the attorney in *Palomo* had one instance of prior discipline, he did not tell the client about receipt of the trust check until the client inquired, and he forged his client's signature. In light of the substantial mitigating factors in petitioner's favor, a less severe discipline than that in *Palomo* clearly seems warranted.

In disciplinary proceedings "[o]ur principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." (*Jackson, supra,* 23 Cal.3d at p. 514.) Of course, petitioner's conduct demands some discipline to protect both the public confidence in the

legal system and to maintain rigorous professional standards. We therefore accept the recommended discipline of the review department.

Petitioner committed a single offense which for several reasons appears to have been aberrant behavior, atypical of his performance during his career both before and after the incident. Prior to June 1983, petitioner had practiced law for over 13 years with no disciplinary record. At the time of the misappropriation, petitioner was struggling with both personal difficulties and an unusual alcohol problem. His immediate acknowledgement of his wrongdoing and his prompt efforts to see restitution was made suggest that the offense was atypical. We note that petitioner's conduct following the incident and during the proceeding has been exemplary. He has made considerable efforts to overcome his alcohol problem, and the record indicates he has not had a single drink in over three years. Further, he appears to have acted negligently rather than with the intent to defraud. For these reasons the recommended discipline will suffice to preserve public confidence and to maintain high standards for the legal profession. Additionally, the offense occurred over three and a half years ago. Although the delay in formal proceedings against an attorney is not a bar to the imposition of discipline, it is a factor to be considered in assessing what discipline is appropriate. (*Chefsky, supra,* 36 Cal.3d at p. 132.) In light of the length of time that has passed, and of the probationary conditions that petitioner abstain from alcohol and pass the Professional Responsibility Examination, the public appears adequately protected.

Accordingly, we order that (1) petitioner be suspended from the practice of law for a period of six months; (2) execution of the order for suspension be stayed; and (3) petitioner be placed on probation for a period of one year on the conditions prescribed by the board. If complete restitution is not made by the end of the one-year probationary period, probation should be extended for another two years or until restitution is made in full, whichever comes first.