[No. S009779. Jan. 8, 1990.]

DOUGLAS WILLIAM SNYDER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Kenneth Kocourek for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

## OPINION

THE COURT.—In this proceeding we review the recommendation of the Review Department of the State Bar Court that petitioner Douglas William Snyder be suspended from the practice of law for five years, with the suspension stayed and petitioner placed on probation for five years on several conditions, including actual suspension for two years and until petitioner shows proof of his rehabilitation, fitness to practice, and learning and ability in the general law. Petitioner contends the recommended discipline is excessive in comparison to that imposed on other attorneys for similar conduct. We find that the recommendation, except for the rehabilitation hearing requirement, is warranted by the seriousness of petitioner's conduct and is consistent with our previous decisions.

## I.  FACTS[1]

Petitioner was admitted to practice in California in July 1980.[2] In March 1984, petitioner was retained to represent Allen Silverstein (who was then a personal friend of petitioner's) in a personal injury action. Under a written fee agreement, petitioner was to receive one-third of any settlement recovered on Silverstein's behalf. In April 1984, petitioner received an insurance draft in the amount of $15,000 as full and final settlement of the action. Petitioner and Silverstein each endorsed the draft, and petitioner deposited it in his client trust account. With Silverstein's consent, petitioner withdrew $5,000 from the trust account as his contingency fee, and withdrew a second $5,000 for the purpose of opening a short-term certificate of deposit on Silverstein's behalf. The remaining $5,000 stayed in the client trust account.

Over the next several months, petitioner made a series of disbursements on Silverstein's behalf:

(1) Because Silverstein's driver's license had recently been revoked, and because petitioner was registered to purchase automobiles at insurance salvage auctions, Silverstein asked petitioner to purchase (at a cost of $2,300) a car for him and disburse $446 for repairs and $750 for auto insurance.

(2) Silverstein authorized petitioner to disburse $150 for repairs to petitioner's own car, which Silverstein had damaged earlier.

(3) Because Silverstein had been living in petitioner's house for several months, petitioner withdrew $900 as rent and $200 for Silverstein's long-distance telephone calls.

(4) As his fee for legal services rendered in connection with a separate matter on Silverstein's behalf, petitioner disbursed $800.

(5) Petitioner wrote $958 in checks in response to miscellaneous requests by Silverstein.

Silverstein expressly or implicitly consented to each of the foregoing disbursements, which totalled $6,504, leaving a balance of $3,496 owed him by petitioner.

---

[1] All facts described herein, except as noted, are based on the reporter's transcript of the proceedings before the hearing panel and the decisions of the hearing panel and review department. Petitioner challenges none of the State Bar Court's findings of fact.

[2] At the hearing conducted by the hearing panel, petitioner testified that he was admitted to the practice of law in 1978. Both the hearing panel and the review department accordingly found that he had been admitted in 1978. However, the official membership records of the State Bar show that petitioner was admitted on July 25, 1980.

In August 1984, Silverstein sought to cash the certificate of deposit. Petitioner informed him that nothing was left of the settlement proceeds, and admitted he had used some of the money for his own expenses.[3] The State Bar began investigating the case in late 1984.

In June 1986, Silverstein retained an attorney, Thomas Beck, to assist him in recovering his share of the settlement proceeds. To ascertain the exact amount owing, Beck repeatedly requested that petitioner provide documentation of the disbursements. Petitioner, having no records of the transactions involving Silverstein's money, failed to respond. (According to his testimony, he has since learned to use a computer to keep track of his transactions and to help maintain adequate records.)

In November 1986, petitioner offered to repay Silverstein $3,400 in monthly installments of $100. After one payment, petitioner defaulted. In June or July 1987, Silverstein rejected petitioner's subsequent offer to reimburse him in the amount of $3,300 plus interest. Finally, in April 1988, petitioner tendered and Silverstein accepted payment of $3,993 as complete restitution. At numerous times between April 1984 and April 1988, the balance in petitioner's client trust account was below $3,496.

## II. DISCIPLINARY PROCEEDINGS

The hearing panel found petitioner misappropriated and commingled client funds in violation of former rules 8-101(A)(2) and 8-101(B)(4) of the Rules of Professional Conduct,[4] and failed to maintain adequate records of client funds and transactions in violation of former rule 8-101(B)(3). Although it found these violations constituted acts of moral turpitude, in mitigation it recognized that petitioner (1) had no prior record of discipline, (2) suffered an emotional breakdown in 1984 when his wife deserted him, forcing him to care for their 11-year-old child and deal with serious financial problems, (3) voluntarily stopped practicing law from 1984 to 1987, with the sole exception of his representation of Silverstein (petitioner admits he erroneously considered his relationship with Silverstein one of mere friendly consultation rather than attorney and client), (4) made full restitution to Silverstein, (5) acted out of "friendship" in purchasing a car for

---

[3] Petitioner was experiencing marital difficulties around the time of the Silverstein incident. Apparently, his fear that his wife might attempt to "freeze" the assets in his client trust account caused him to withdraw money from the account and move it to his refrigerator. Through petitioner's inadvertence, the money was accidentally removed from the refrigerator and disposed of as trash. Petitioner's difficulties in managing money were compounded by persistent financial troubles, which caused him to file for bankruptcy shortly after this incident.

[4] New Rules of Professional Conduct became operative on May 27, 1989; all references to rules refer to the former Rules of Professional Conduct of the State Bar of California.

Silverstein, and (6) engaged in only an "isolated" instance of misappropriation. The panel recommended that petitioner be suspended from the practice of law for five years, with the suspension stayed on various conditions, including actual suspension for two years and the requirement that he see a psychiatrist for at least one year.

The review department, by vote of twelve to three, adopted the findings of fact and conclusions of the panel, modifying its recommendation of discipline in only one respect: petitioner should be actually suspended for two years *and* "until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and learning and ability in the general law pursuant to Standard 1.4(c)(ii), Standards for Attorney Sanctions for Professional Misconduct. . . ." Two of the dissenters asserted the recommended discipline was excessive; the third thought it insufficient.

## III.  DISCUSSION

Petitioner challenges neither the State Bar Court's findings of fact nor its conclusions of law. He simply asserts the discipline recommended by the review department is excessive.

In assessing what discipline is warranted by petitioner's conduct, our paramount concern is protection of the public, the courts, and the integrity of the legal profession. (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911].) Although we exercise independent judgment in examining the facts before us, our review is generally limited to evidence presented in the disciplinary proceedings below. (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 797 [205 Cal.Rptr. 834, 685 P.2d 1185].) Moreover, we accord great weight to the recommendation of the review department (*Tarver, supra,* 37 Cal.3d at p. 133), and petitioner bears the burden of proving the recommendation erroneous or unlawful. (*In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].)

Petitioner challenges the review department's recommendation in three respects. First, he claims a two-year actual suspension is excessive, given the evidence of substantial mitigating factors introduced at the hearing and recognized by the hearing panel.[5] Second, he maintains that a two-year

---

[5] Petitioner now asserts his efforts to obtain treatment for an alcohol problem indicate a desire to "again be a benefit to society" and should thus be considered in mitigation. However, petitioner never attempted to introduce evidence of these efforts during the disciplinary proceedings below. Thus, we do not consider them here. (*Palomo, supra,* 36 Cal.3d at p. 797; *In re Possino* (1984) 37 Cal.3d 163, 171 [207 Cal.Rptr. 543, 689 P.2d 115] [although occasionally we have considered evidence not in the record below, we are particularly reluctant to do so when such evidence "consists of opinions about petitioner's mental attitude, and is based largely on petitioner's own out-of-court statements"].) Even if we did, we would not be

actual suspension is disproportionate to the discipline imposed in similar recent cases. Third, he asserts the requirement that he prove his rehabilitation before being able to practice again is "grossly unfair" and unnecessary given the nature of his misconduct. For the reasons set forth below, only the third contention has merit.

### 1. *Excessiveness of Discipline*

The State Bar Court found petitioner misappropriated client funds and failed to keep adequate records of transactions involving such funds. ■ We have repeatedly held that misappropriation is a serious offense warranting severe discipline in the absence of "clearly extenuating circumstances." (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239]; *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449]; *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 387-388 [96 Cal.Rptr. 30, 486 P.2d 1230].) Indeed, standard 2.2 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V), which serve as advisory guidelines for discipline, provides: "Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate shall disbarment not be imposed. In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances." Petitioner does not claim his misappropriation of Silverstein's funds was not wilful or that the amount of funds misappropriated was insignificant; he merely asserts that the mitigating circumstances render actual suspension unwarranted.

As noted above, the State Bar Court recognized six substantial mitigating factors in this case.[6] Although these factors show disbarment is not

inclined to give them great weight. Although we are not insensitive to alcohol abuse and rehabilitation therefrom, our paramount concern—protecting the public from attorney misconduct—dictates that petitioner's rehabilitative efforts are entitled to little weight in mitigation, particularly in the absence of compelling evidence that petitioner has completed the rehabilitation process. (See, e.g., *In re Demergian* (1989) 48 Cal.3d 284, 298 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663-664 [238 Cal.Rptr. 394, 738 P.2d 740]; *Palomo, supra,* 36 Cal.3d at p. 797.)

[6] In addition, petitioner introduced evidence of several potentially mitigating factors: (1) he had been candid with Silverstein and did not attempt to mislead him about what he had done with the settlement funds; (2) he has learned from his wrongdoing and has taken actions to prevent recurrence of his failure to keep adequate records; (3) he has voluntarily sought therapy for his emotional problems; and (4) he has made no attempt to misappropriate funds in the jobs he has held since the Silverstein incident. The State Bar Court did not explicitly recognize these factors in mitigation. Although we agree with petitioner that they mitigate his misconduct to some extent, we conclude they do not justify departure from the review department's disciplinary recommendation. As discussed below, to the extent petitioner's

warranted, they are not so compelling that petitioner should not be actually suspended for two years.

The first mitigating factor recognized by the hearing panel—petitioner's lack of a prior record of discipline—is unpersuasive in this case. A "blemish-free record of . . . relatively short duration is entitled to little weight in mitigation." (*In re Demergian, supra,* 48 Cal.3d at p. 294; *Rosenthal, supra,* 43 Cal.3d at p. 664; *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].) Petitioner was admitted to the bar in 1980; he had practiced for less than four years at the time the Silverstein incident occurred. In the only case cited by petitioner for the proposition that his lack of prior record should substantially affect our choice of discipline (*Waysman, supra,* 41 Cal.3d 452), the petitioner had practiced for 12 years without incident. By contrast, in *Smith, supra,* at page 540, we held the petitioner's lack of a prior record for six years unpersuasive as a mitigating factor. (See also *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 686 [244 Cal.Rptr. 462, 749 P.2d 1317] [lack of prior record for three years and three months before misconduct not entitled to great weight in mitigation].) That conclusion applies here.

Similarly, we give little weight to the sixth mitigating factor recognized by the State Bar Court. Given the relatively short period of petitioner's practice before and after the incident at issue here, the fact that the misconduct was "isolated" and has not recurred provides little reassurance that in fact it will not recur. This is particularly true in light of the fact that the misconduct itself extended over a substantial period of time and encompassed several separate acts.

We agree that the second and third mitigating factors recognized by the State Bar Court—petitioner's emotional breakdown and voluntary termination of practice between 1984 and 1987 (except for his representation of Silverstein)—carry sufficient weight to make disbarment inappropriate (see, e.g., *Frazer* v. *State Bar* (1987) 43 Cal.3d 564, 579-580 [238 Cal.Rptr. 54, 737 P.2d 1338]), but we are not persuaded that they justify a departure from the review department's recommendation. Although emotional or psychological difficulties and attempted rehabilitation therefrom may lessen the moral culpability of petitioner's misconduct, they cannot immunize him from the disciplinary measures necessary to protect the public in the future. (*Coppock* v. *State Bar, supra,* 44 Cal.3d at p. 686.) In short, we are not inclined to deviate from the disciplinary recommendations made by the hearing panel (and adopted by the review department), which had the

---

evidence relates to his alleged rehabilitation, we adopt the review department's conclusion that continued psychiatric care and actual suspension are necessary to ensure petitioner's rehabilitation.

firsthand opportunity to observe petitioner's demeanor and prescribed mandatory continuing psychiatric therapy as part of petitioner's discipline. (See, e.g., *Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 322-323 [219 Cal.Rptr. 489, 707 P.2d 862].)

As to the fourth mitigating factor recognized by the State Bar Court—petitioner's full restitution to Silverstein—petitioner fails to show why such restitution warrants imposing less than two years' actual suspension. Restitution *after* disciplinary proceedings have been initiated is entitled to little weight in selecting the appropriate discipline for professional misconduct. (*Hipolito* v. *State Bar* (1989) 48 Cal.3d 621, 628 [257 Cal.Rptr. 331, 770 P.2d 743]; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908]; *Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 405 [158 Cal.Rptr. 869, 600 P.2d 1326].) Here, petitioner initially failed to respond to the efforts of Silverstein and his attorney to ascertain and recover the amount owed. He did not make full restitution until over three years after disciplinary proceedings had been initiated. Restitution in such circumstances carries little weight in choosing the discipline required to protect the public from future misconduct.

Finally, the State Bar Court recognized petitioner's friendship with Silverstein as a mitigating factor. Petitioner contends the fact that he was dealing with Silverstein as a "friend" rather than a "client" should be given substantial weight in mitigation. We disagree. Petitioner manifestly attempted to handle Silverstein's legal affairs in a professional capacity. His misconduct consisted of the inadequacy of the services rendered, regardless of his initial motivation.

2. *Disproportionality of Discipline*

■ Contrary to petitioner's contention, the recommendation of a two-year actual suspension as a condition of probation is consistent with our prior decisions. Neither of the cases (*Waysman* v. *State Bar, supra,* 41 Cal.3d 452, and *Palomo* v. *State Bar, supra,* 36 Cal.3d 785) cited by petitioner in support of his contention suggests otherwise. In *Waysman,* we refused to impose any actual suspension on an attorney who had misappropriated approximately $24,000 in client funds. Several factors justifying that result are not present here. First, Waysman immediately retained a certified public accountant to help straighten out his books; here petitioner failed to take any steps to clarify the confusion surrounding his handling of Silverstein's funds. Second, Waysman immediately assumed full responsibility for the misappropriation and voluntarily began restitution within five months of the misconduct; here petitioner failed to facilitate restitution for several years. Third, Waysman not only quickly acknowledged his emotional and

alcohol abuse problems and began rehabilitation within four months, but also began to volunteer two and a half days per week to work with other recovering alcoholics; here petitioner engaged in no comparable efforts showing his remorse and resolve to avoid recurrence of his misconduct. Finally, in *Waysman* the State Bar Court recommended no actual suspension, and we concurred with this recommendation; here the case comes to us under a considerably stricter recommendation.

In *Palomo,* we declined to impose actual suspension on an attorney who forged his client's endorsement on a check and deposited the check in his firm's payroll rather than its client trust account. The attorney made restitution within weeks of the incident, and the State Bar Court recommended lenient discipline. Recognizing these factors, we nonetheless commented that "[p]etitioner's conduct warrants *at least* the lenient discipline recommended by the State Bar Court." (36 Cal.3d 785, 797.) In short, *Palomo* does not support the proposition that petitioner is entitled to less severe discipline than recommended by the review department.

The facts of this case are similar to *Lawhorn* v. *State Bar, supra,* 43 Cal.3d 1357. There, we imposed two years' actual suspension (with five years' probation) on an attorney who failed to pay a client more than $1,350 due him as part of a settlement, while allowing the balance in his client trust account to fall to zero. As in this case, the attorney testified that the lack of funds was caused by his withdrawals from the client trust account to protect them from seizure by his estranged wife. As here, the attorney voluntarily ceased practicing law while the disciplinary proceedings were pending. Although Lawhorn's misconduct was somewhat more serious than petitioner's, in that he affirmatively misrepresented to the client the reason for the shortfall, the mitigating factors—particularly the attorney's restitution within five months of the incident and before initiation of disciplinary proceedings—were more compelling than in this case. On balance, the discipline imposed in *Lawhorn* is appropriate in this case as well.

### 3. *Unfairness of Rehabilitation Hearing Requirement*

██ Petitioner contends that requiring him to demonstrate his learning in the general law, good moral character, and rehabilitation before being able to resume practice after suspension would be unwarranted and "grossly unfair" under the circumstances. We agree.

The review department's recommendation of a rehabilitation hearing was based on standard 1.4(c)(ii), Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, hereafter standard 1.4(c)(ii)). We have applied standard 1.4(c)(ii) in cases involving miscon-

duct similar to petitioner's. (See, e.g., *Rhodes* v. *State Bar* (1989) 49 Cal.3d 50, 61 [260 Cal.Rptr. 266, 775 P.2d 1035] [misconduct consisted of writing checks knowing that checking account contained insufficient funds]; *In re Carr* (1988) 46 Cal.3d 1089, 1091 [252 Cal.Rptr. 24, 761 P.2d 1011] [misconduct consisted of misdemeanor conviction for driving under the influence of alcohol].)

Nevertheless, petitioner persuasively argues that applying the standard in this case would be unjustified because his learning in "general law" was "never an issue in this proceeding." Standard 1.4(c)(ii) merely states that a rehabilitation hearing "normally" should accompany suspension of two or more years. In this case, unlike others in which we have applied the standard, petitioner committed no crime. His misconduct, serious as it is, will be addressed adequately by two years' actual suspension and behavioral requirements during five years' probation. Under the State Bar Court recommendations, petitioner will be required to obtain continuing psychiatric care, pass the Multistate Professional Responsibility Examination, and undertake measures to improve his accounting and recordkeeping skills. These requirements directly address petitioner's misconduct. Although applying standard 1.4(c)(ii) would undoubtedly be of some additional benefit, it is not essential in order to ensure petitioner's rehabilitation.

## IV.   DISPOSITION

For the foregoing reasons, it is ordered that petitioner Douglas William Snyder be suspended from the practice of law for five years; that execution of this order be stayed; and that petitioner be placed on probation for five years on the following conditions: (1) that he be actually suspended for two years, and (2) that he comply with all the other conditions and resolutions (except the requirement that he show satisfactory proof of his rehabilitation pursuant to standard 1.4(c)(ii), Standards for Attorney Sanctions for Professional Misconduct) set forth by the review department on March 14, 1989. In addition, it is ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of our order. This order is effective on finality of this decision. (See Cal. Rules of Court, rule 24(a).)

**KAUFMAN, J.,** Concurring and Dissenting.—I concur in the court's order, except the imposition of two years' actual suspension as a condition of petitioner's probation to which I dissent. In view of the overwhelming mitigating circumstances presented by petitioner, and found true by both the hearing panel and the review department, no more than one year's actual suspension ought to be imposed.

Petitioner does not dispute that misappropriation of funds is a serious matter warranting substantial discipline. Nevertheless, where "clearly extenuating circumstances" exist, discipline less than disbarment is appropriate. (See *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].) I agree with the court that petitioner's misconduct does not warrant disbarment.

Under the advisory guidelines of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V), standard 2.2, where "the most compelling mitigating circumstances clearly predominate," a period of one year's actual suspension, though not less than one year, may be appropriate. The numerous and compelling mitigating circumstances presented by petitioner clearly predominated here.

Petitioner's wife deserted him in 1981 or 1982, leaving him to care for their minor daughter. The breakup of the marriage was particularly difficult because the wife would come back for brief periods and then leave again without warning. Petitioner was in distressed financial circumstances. Foreclosure proceedings were instituted on the family home. Petitioner underwent bankruptcy. He suffered a prolonged emotional breakdown, recognized his problem and voluntarily ceased practicing law from 1984 to 1987, with the sole exception of acting for Allen Silverstein, a close personal friend. Petitioner regarded most of his actions on Silverstein's behalf to have been undertaken on the basis of their friendship, and mistakenly did not view the relationship as an attorney-client relationship.

The misconduct at issue arose out of the only case he undertook on behalf of his friend Silverstein. Both the hearing panel and the review department found this was an isolated instance of misconduct. The unusual and personal character of a number of the disbursements, as shown by the record, support petitioner's assertion that he mistakenly believed he was acting primarily as a friend and not as an attorney. The isolated misconduct took place in circumstances beset with difficulties not usually (and no longer) present in petitioner's life, and it was uncharacteristic of his normal conduct as an attorney.

Though petitioner had not been in practice for a great many years at the time the misconduct occurred, he had no prior record of discipline and "[t]he absence of a prior disciplinary record is in itself an important mitigating circumstance." (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82].) In addition, petitioner sought and has voluntarily continued with psychological therapy to overcome his emotional breakdown. Petitioner made full restitution and has learned from his mistakes. He now uses a computer to maintain proper accounting records.

All these factors, found by the hearing panel and adopted by the review department, are overwhelmingly mitigating and demonstrate that a one-year actual suspension would be fully adequate to protect the public and maintain public confidence in the disciplinary system. Accordingly, in my view petitioner has met his burden of demonstrating that the recommended discipline is excessive. I would impose actual suspension of no more than one year.

Broussard, J., concurred.