[L.A. No. 32324. Jan. 25, 1988.]

In re JEFFREY NADRICH on Disbarment.

COUNSEL

Larry L. Scissors for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Magdalene Y. O'Rourke and Ellen R. Peck for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court that petitioner Jeffrey Nadrich be disbarred from the practice of law in the State of California. (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951.) The recommendation is based on petitioner's 1982 conviction for possessing, with intent to distribute, approximately 30 grams of lysergic acid diethylamide (L.S.D.), and using interstate commerce to distribute that substance. After reviewing the record and petitioner's objections, we conclude that a less severe form of discipline will sufficiently protect the public and profession and better recognize the mitigating factors amply established in this case.

In January 1983 we placed petitioner on interim suspension, to commence on February 3, 1983, pending final disposition of the disciplinary proceeding. We referred the matter to respondent State Bar for a hearing to be held after petitioner's release from incarceration.

In July 1986 a panel of the State Bar Court held a two-day evidentiary hearing on the matter. After listening to ten witnesses and receiving considerable documentary evidence, the three-member panel unanimously recommended that petitioner be suspended from the practice of law for a period of five years, suspension stayed, with one year of actual suspension followed by four years of probation. In May 1987 the review department adopted the hearing panel's findings of fact almost verbatim, but rejected the panel's disciplinary recommendation. Instead, by a vote of seven to five, the review department recommended petitioner be disbarred.

In his petition in this court petitioner acknowledges his guilt, accepts full responsibility for his actions, and recognizes that his conduct warrants discipline to protect both the profession and the public. He contends, however, that the penalty of disbarment is unduly severe in light of the many mitigating circumstances.

We adopt the findings of the hearing panel and review department as follows:

Petitioner received his law degree in 1975 and was admitted to practice in 1976. He worked briefly for another attorney, then opened his own office. He also earned a California real estate broker's license.

In September 1976 petitioner sustained multiple injuries in an automobile accident. The injuries left him with continual severe pain in his lower back and thighs. His doctors prescribed Percodan for the pain, and the drug gave petitioner almost complete relief. Unfortunately, Percodan—a synthetic opiate—is addicting. During the next two years, as petitioner continued taking Percodan under his doctors' prescriptions, he became wholly reliant on and addicted to the drug.

In early 1979 petitioner's doctors refused to prescribe any more Percodan, but failed to offer petitioner any assistance or treatment to help him overcome his addiction. This breach of medical duty left petitioner, who had become addicted quite legally, with no lawful way to satisfy his addiction.[1]

As a result, petitioner began purchasing and using illegal drugs, including opium and heroin. He stopped practicing law, and gradually sank into a state of isolation and emotional despair. On at least one occasion he nearly died from a drug overdose. In this impaired and addicted state, petitioner began selling drugs to subsidize his own drug use.

In October 1981, a drug dealer turned government informant named Michael M. approached petitioner about purchasing two grams of L.S.D. Petitioner arranged the sale at a price of $4,000, $400 of which represented his commission; he used the $400 to buy drugs for his own use. In January 1982, Michael M. again approached petitioner and asked to purchase 30 grams of L.S.D. Petitioner arranged the sale at a price of $60,000, $6,000 of which was to be his commission. He obtained the L.S.D. and flew from California to New Jersey to deliver it. He was arrested on his arrival in New Jersey.

In January 1982, petitioner was charged with a variety of federal offenses arising out of the drug transaction. In March 1982 petitioner pleaded guilty to possession of a controlled substance with intent to distribute it (21 U.S.C. § 841(a)), and to using interstate commerce to distribute a controlled substance (18 U.S.C. § 1952). He was sentenced to a term of seven years. After spending three years in the federal prison system and four months in a halfway house, he was paroled in August 1985.

Upon his incarceration petitioner acknowledged responsibility for his actions and set out to rebuild his life. He went through a difficult period of abrupt opiate withdrawal. After arriving at Terminal Island federal prison

---

[1] Both the hearing panel and the review department found "It is a physician's duty to assist his patient in this manner. It is contraindicated to simply cut off a patient's prescription. One reason is that a patient may seek out and use opiates from the 'street' on an ongoing basis. This is what happened to [petitioner] who thereafter commenced to purchase and use illegal opiates."

in June 1982, he entered that facility's drug abuse program and began psychological therapy. He continued both activities throughout his one-year stay at Terminal Island. When transferred to the federal prison camp at Lompoc in May 1983, petitioner became an active member of Alcoholics Anonymous (A.A.), founded a chapter of Narcotics Anonymous (N.A.), participated in weekly alcohol and drug awareness seminars, and continued both individual and group psychotherapy. He remained active in all these activities throughout his two years at Lompoc.

Petitioner's self-improvement campaign has continued, and indeed intensified, during the more than two years since his release. He remains deeply involved in A.A. and N.A., and spends many of his nonworking hours helping others who have drug and alcohol problems. He has become an active member of two additional groups—The Lawyer's Forum of Southern California and The Other Bar—that help lawyers and judges cope with drug and alcohol problems. He has also become a leader and public representative of the Alcohol Action Program of Jewish Family Services of Los Angeles, and a member of A.A's Committee for Cooperation With the Professional Community.

Finally, petitioner has continued to receive individual psychotherapy since his release, and his therapist reports his prognosis is "excellent." He has abstained from all drug use since January 1982, an abstention that has been verified by regular drug tests during the entire period. He presently works as a legal assistant for several attorneys in his area.

By all indications, petitioner has travelled a long way up the road to recovery. Both the hearing panel and review department found that he was "contrite and remorseful for his misdeeds," and that his extensive involvement in recovery-oriented organizations was "reflective of his own established rehabilitation, of his desire to aid in his own recovery, to make amends for his past conduct, and to become the best person he possibly can be."

■ While we give great weight both to the review department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we exercise our independent judgment in determining the appropriate discipline to be imposed (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]). This is particularly appropriate when, as here, the review department and the hearing panel disagreed, and the

review board itself was closely divided.[2] Petitioner, however, bears the burden of showing the review department's recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].)

The crimes of which petitioner was convicted are no doubt serious, and warrant disbarment in the absence of compelling mitigating circumstances. (Bus. & Prof. Code, § 6101; see, e.g., *In re Giddens* (1981) 30 Cal.3d 110, 116 [attorney disbarred for conspiring to distribute amphetamines].) ■ However, the primary purpose of attorney discipline is not the punishment of the attorney; it is the protection of the public, the profession, and the courts. (*In re Severo, supra,* 41 Cal.3d at p. 500.) Accordingly, we must consider any applicable mitigating or aggravating circumstances (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911]), and recognize any factors "which at once afford some explanation of [petitioner's] conduct, allow further assessment of his character in the light of his post-conviction behavior and all in all have a significant mitigating effect on the charges now before us." (*In re Kreamer, supra,* 14 Cal.3d at p. 531.)

■ Many such mitigating factors are present here. Petitioner had no prior disciplinary record in his brief period of practice. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) He withdrew from the active practice of law prior to committing his criminal acts (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387 [90 Cal.Rptr. 420, 475 P.2d 652]), and his offenses were neither committed in his capacity as an attorney nor in any way related to his practice of law (*In re Kreamer, supra,* 14 Cal.3d at p. 531).

Petitioner's drug addiction was the result not of illicit drug use, but of legitimate medical treatment. His involvement with illegal drugs began because that treatment was abruptly cut off. He did not sell drugs because of a simple desire for personal enrichment. (*In re Higbie* (1972) 6 Cal.3d 562, 573 [99 Cal.Rptr. 865, 493 P.2d 97].) Rather, he did so because his addiction, the sudden unavailability of Percodan, and his withdrawal from legal practice combined to create an overwhelming financial pressure. (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 979 [126 Cal.Rptr. 801, 544 P.2d 937]; *In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651].) Further, petitioner committed his illegal acts during a period of protracted emotional difficulties (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168

---

[2] The five review department referees who voted against the disbarment recommendation requested their opposition be put on the record. Four of the five believed a two-year actual suspension would be sufficient; the fifth thought no actual suspension necessary. (Cf. *In re Chira, supra,* 42 Cal.3d at p. 909 [lawyer of 24 years, convicted of conspiracy to impede the lawful function of the Internal Revenue Service (18 U.S.C. § 371), given no actual suspension].)

Cal.Rptr. 333, 617 P.2d 486]; *In re Fahey* (1973) 8 Cal.3d 842, 850 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]) and serious drug problems (see *Demain* v. *State Bar, supra,* 3 Cal.3d at p. 385; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 459 [224 Cal.Rptr. 101, 714 P.2d 1239]).

After his conviction, petitioner immediately entered a drug treatment program. (*Chasteen* v. *State Bar* (1985) 40 Cal.3d 586, 593 [220 Cal.Rptr. 842, 709 P.2d 861].) He became and has remained very active in A.A. and other recovery-oriented self-help organizations. (*Waysman* v. *State Bar, supra,* 41 Cal.3d at p. 457; *In re Cohen, supra,* 11 Cal.3d at p. 939.) He also sought out psychological counselling, and has continued it, apparently with considerable success, to the present time. (*Tenner* v. *State Bar, supra,* 28 Cal.3d at p. 205.) He works as a legal assistant for other attorneys (*In re Dedman* (1976) 17 Cal.3d 229, 234 [130 Cal.Rptr. 504, 550 P.2d 1040]), and actively participates in numerous community activities (*ibid.*), including those designed to help other bar members and judges deal with drug and alcohol problems (*Waysman* v. *State Bar, supra,* 41 Cal.3d at p. 457). In sum, he has "earnestly and successfully engaged in a strenuous rehabilitative effort which, in fairness to petitioner, we cannot ignore." (*Tenner* v. *State Bar, supra,* 28 Cal.3d at p. 207.) Indeed, it is difficult to imagine what more petitioner could have done to demonstrate the sincerity of his commitment to positive change and rehabilitation.[3]

 At the hearing, petitioner expressed remorse and admitted the wrongfulness of his acts. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 888-889 [126 Cal.Rptr. 793, 544 P.2d 929]; cf. *In re Severo, supra,* 41 Cal.3d at p. 504; *Tarver* v. *State Bar, supra,* 37 Cal.3d at p. 135.) He was candid and cooperative throughout the disciplinary proceedings.[4] (*Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 748; *In re Higbie, supra,* 6 Cal.3d at p. 574; cf. *Honoroff* v. *State Bar* (1958) 50 Cal.2d 202, 210. [323 P.2d 1003]) Forty-five individuals, including twenty-eight members of the bar, wrote letters to the hearing panel praising petitioner's character. Ten witnesses, including six bar members, testified to the same. (*In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016].)

The review department's sole stated reason for recommending disbarment is: "[Petitioner] was a professional dealer in illegal drugs for a substan-

---

[3] We note that standard 3.2 of the State Bar Standards for Attorney Sanctions for Professional Misconduct states that an attorney convicted of a crime such as petitioner's will be disbarred unless "the most compelling mitigating circumstances clearly predominate." The hearing panel specifically found that in petitioner's case "it is overwhelmingly established that the most compelling mitigating circumstances clearly predominate." While the Standards for Attorney Sanctions are simply guidelines for use by the State Bar and do not affect the independence of our review (*Greenbaum* v. *State Bar, supra,* 43 Cal.3d at p. 550), we nonetheless find them instructive as we make our determination.

[4] Although convicted on charges arising out of only two drug transactions, petitioner frankly admitted having sold drugs on eight occasions prior to his arrest.

tial period of time and did not cease to be so until arrested. A lawyer who engages in such conduct should be disbarred." This statement betrays an oversimplified and unsupported view of the law. First, it suggests, incorrectly, that we discipline attorneys simply to punish them. (Cf. *In re Severo, supra,* 41 Cal.3d at p. 500.) Second, it implies, also incorrectly, that we will not consider substantial mitigating circumstances in cases involving serious offenses. (Cf. *In re Kreamer, supra,* 14 Cal. 3d at p. 531.) Third, it intimates, again incorrectly, that we apply rigid disciplinary standards, and that we analyze attorney discipline cases in the abstract instead of resolving each case on its own particular facts. (Cf. *In re Dedman, supra,* 17 Cal.3d at p. 233.) As a reason for recommending disbarment, in short, the review department's statement is simply not good enough.

Respondent argues that disbarment is appropriate because petitioner has not demonstrated his complete rehabilitation for a sufficient period of time in a noncustodial environment. This is doubtless an important consideration, yet we note that petitioner was released from custody over two years ago and has suffered no character relapses during that time. We further note petitioner has completely abstained from drugs and alcohol for nearly six years—including the two-year period since his release. Admittedly, two years of demonstrated noncustodial rehabilitation might be insufficient to forestall disbarment in other cases involving offenses as serious as that of petitioner. However, in light of petitioner's untiring efforts at self-improvement, positive contributions to the community and profession, longstanding sobriety, and impressive support among both friends and professional associates, we find his period of noncustodial rehabilitation is not so insubstantial as to require disbarment.

Respondent also asserts disbarment would afford the public and the legal profession greater protection than would suspension. This is so, says respondent, because if and when petitioner applies for reinstatement (1) more noncustodial time will have passed and (2) petitioner's conduct and rehabilitation will be thoroughly examined as part of the reinstatement process. However, as respondent admits, if petitioner were disbarred he would be eligible to apply for reinstatement very shortly—on February 3, 1988—five years from the effective date of his interim suspension. (Rules Proc. of State Bar, rule 622.) It is difficult to see how petitioner's case would be made more persuasive by the passage of limited additional days of noncustodial time, or how a thorough examination of his conduct and rehabilitation at that time would be any more enlightening than the thorough examination taking place here and now. Indeed, protection of the public would be better served by supervision of the petitioner over a period of several years on probation.

Viewing petitioner's wrongful conduct in light of both the circumstances surrounding that conduct and petitioner's demonstrated rehabilitation, we

conclude the protection of the public, the courts, and the legal profession does not require disbarment. A lesser degree of discipline, specified below, will be sufficient to insure that petitioner's complete rehabilitation is very well established before he escapes the properly watchful eye of the State Bar.

We order that petitioner Jeffrey Nadrich be suspended from the practice of law for five years, the first year of which shall be actual suspension. During the year of actual suspension, he shall take and pass the Professional Responsibility Examination. Following actual suspension, he shall be placed on probation for the remaining four years of the five-year term, during which period he may engage in the practice of law. His probation is subject to the following conditions:

1. That during the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California;

2. That during the period of probation, he shall report not later than January 10, April 10, July 10 and October 10 of each year or part thereof during which the probation is in effect, in writing, to the Office of the Clerk, State Bar Court, Los Angeles (provided, however, that if the effective date of probation is less than 30 days preceding any of said due dates, he shall file his first report not later than the second such due date following the effective date of probation). Each such report shall state that it covers the preceding calendar quarter or applicable portion thereof, verifying by affidavit or under penalty of perjury:

(a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation; ¶ (b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period; ¶ (c) provided, however, that he shall file a final report, covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph, certifying that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period;

3. That he shall abstain from the use of intoxicants and report that he has done so in any report he is required to render under these conditions of probation;

4. That he shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance

consistent with these terms of probation. During the period of probation, he shall furnish such reports concerning his compliance as the probation monitor referee may request. He shall cooperate fully with the probation monitor to enable the monitor to discharge his duties pursuant to rule 611, Rules of Procedure of the State Bar;

5. During the period of probation, petitioner shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, his current office or other address for State Bar purposes and all other information required by that section. He shall report to the membership records office of the State Bar all changes of information as prescribed by said section 6002.1;

6. That except to the extent prohibited by the attorney-client privilege or the privilege against self-incrimination, petitioner shall answer fully, promptly and truthfully to the Presiding Referee of the State Bar Court, or to the referee's designee or any probation monitor referee assigned under these conditions of probation, at petitioner's office or an office of the State Bar (or another place agreed upon by petitioner and the Presiding Referee, designee or probation monitor referee), any inquiry or inquiries directed to him personally or in writing by said Presiding Referee, designee, or probation monitor referee relating to whether petitioner is complying or has complied with these terms of probation;

7. That the period of probation shall commence as of February 25, 1989;

8. That at the expiration of the probation period, if petitioner has complied with the terms of probation, then without further order his probation and suspension shall terminate and he shall be reinstated as an attorney with full status in the bar.

This order is effective 30 days after the filing of this opinion.

EAGLESON, J., Concurring.—I begin by sharing the dissent's concerns over the type of misconduct involved in this case. Petitioner has gone beyond breaching the fiduciary duties imposed upon him as an attorney, and has engaged in crimes against society. His possession and interstate distribution of large quantities of an illicit and dangerous drug is criminal conduct, the seriousness of which cannot be overstated. Petitioner's two criminal convictions also represented only a small fraction of a concededly larger pattern of unlawful conduct involving other drug transactions.

Nonetheless, there is more to this case than drug-dealing for personal gain. While I do not in any way condone petitioner's activities, he has painted a convincing picture of a once-productive individual whose lawful

use of a prescriptive drug transformed him into an addict. He resorted to criminal conduct only after being abandoned by the medical profession.

Most telling, of course, is the overwhelming evidence of rehabilitation. Since the inception of his incarceration, petitioner has consistently acknowledged responsibility for his crimes, and has diligently sought to permanently rid himself of his addiction. He has actively and selflessly participated in various recovery programs, including those specifically designed to help solve the drug and alcohol problems of other members of the legal profession. Finally, petitioner's abstention from drug use is well documented, his therapeutic prognosis is excellent, and his desire to contribute to the legal profession is strong.

Accordingly, our task is to balance these unique facts against the need to protect the public, bench, and bar from further injury. I believe that the majority has made the proper disciplinary choice. A probationary term enables the State Bar and this court to carefully monitor petitioner's progress and ensure that his rehabilitation continues. The discipline ordered by the majority imposes a one-year period of actual suspension and four additional years of probation. In short, petitioner will be under our watchful eyes for the next five years.

In contrast, disbarment would not lead to such particularized supervision. As noted in the majority opinion, petitioner becomes eligible to apply for reinstatement in February 1988. Assuming his application—which would undoubtedly document his impressive rehabilitative effort—is granted, he would soon reenter the profession and be free of all probationary supervision.

Therefore, in light of the severity of petitioner's misconduct and the need to ensure that his commendable reform efforts continue, I concur with the discipline imposed by the majority.

Arguelles, J., and Kaufman, J., concurred.

LUCAS, C. J.—I respectfully dissent. In my view, we should uphold the State Bar Court's recommendation that petitioner be disbarred. Any lesser punishment for petitioner, convicted of drug dealing on a large scale, is both inadequate to protect the public and insufficient to deter similar offenses by petitioner and others.

According to the State Bar, the federal offenses of which petitioner was convicted involved the possession for sale of approximately 120,000 dosage units of LSD, and the interstate transportation of those drugs for sale. Petitioner played an active and willing role in the scheme, which was not an isolated occurrence but part of a pattern and practice by him to acquire and sell large quantities of illegal drugs (including heroin, cocaine and LSD) for

personal gain. The State Bar observes that petitioner admitted engaging in at least *eight* such transactions over a two-year period.

In past cases, for the protection of the public, the courts and the legal profession itself, we have disbarred attorneys who engaged in similar practices. (E.g., *In re Giddens* (1981) 30 Cal.3d 110, 115 [177 Cal.Rptr. 673, 635 P.2d 166] [conspiracy to distribute large quantities of amphetamines].) Disbarment is not, of course, a permanent condition—a disbarred attorney may apply for reinstatement within five years of his interim suspension. Thus, in the present case, petitioner may seek reinstatement as early as February 1988. But from the standpoint of protecting the public, the advantage of disbarment as opposed to a fixed period of suspension is that the burden will rest on petitioner, following the disbarment period, to demonstrate his rehabilitation and thereby establish his fitness to resume his law practice.

As we previously stated, rejecting a claim of rehabilitation by two disbarred attorneys convicted of grand theft and forgery, "evidence of any rehabilitation will be more persuasive if offered during any reinstatement proceedings after disbarment. At that time petitioners may be able to show by sustained exemplary conduct over an extended period of time that they have reattained the standard of fitness to practice law." (*In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191].) We relied on *Petty* in disbarring the drug-dealing attorney in *Giddens, supra.*

The majority, pointing to the considerable mitigating evidence and "testimonials" marshalled by petitioner, suggests that the State Bar has had adequate time since petitioner's suspension in which to evaluate his rehabilitation, and that no purpose is served in waiting a few more months to undertake that evaluation in the context of an application for reinstatement. This analysis appears to miss the point: The State Bar has concluded that petitioner should be disbarred, i.e., that thus far he has *not* adequately demonstrated his rehabilitation. As the State Bar observes, petitioner's testimonials regarding his rehabilitative efforts cover only the two-year period following his release from federal custody. Petitioner must therefore await the passage of a more substantial period of time before seeking readmission to practice.

Petitioner had the burden of demonstrating that the State Bar's disbarment recommendation is erroneous. (E.g., *In re Schwartz* (1982) 31 Cal.3d 395, 399-400 [182 Cal.Rptr. 640, 644 P.2d 833, 26 A.L.R.4th 1077].) In my view, no such error has been demonstrated. Accordingly, I would accept the State Bar's recommendation and disbar petitioner.

On March 3, 1988, the opinion was modified to read as printed above.