[No. S010264. Jan. 14, 1991.]

In re MICHAEL J. SCOTT on Disbarment.

**COUNSEL**

Theodore A. Cohen for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Starr Babcock, and William Davis for Respondent.

OPINION

**THE COURT.**\*—The Review Department of the State Bar Court (review department) recommends that petitioner Michael J. Scott be disbarred from the practice of law in California. While a municipal court judge in Santa Barbara County, petitioner pled guilty to possession of illegal drugs and resigned his judicial post as a condition of his plea bargain. The surrounding facts included petitioner's having presided over the arraignment of an individual who had previously sold him drugs, at which proceeding petitioner authorized reduction of the defendant's bail.

The review department concluded the circumstances surrounding the offense involved moral turpitude warranting disbarment consistent with standard 3.2, Rules of Procedure of the State Bar, division V, Standards for Attorney Sanctions for Professional Misconduct (standards).[1] The dissenting referees concluded disbarment was excessive discipline. The assistant presiding referee wrote a separate dissent, agreeing that petitioner's acts posed a significant enough threat to the judicial system to constitute moral turpitude, but concluding that the substantial evidence of mitigation and rehabilitation warranted no more than a two-year actual suspension.

Having reviewed the record and considered the arguments of petitioner and the State Bar, we conclude that the review department's recommended discipline of disbarment is appropriate.

## I. FACTS AND PROCEDURAL BACKGROUND

Petitioner was admitted to the State Bar in 1976. He is a former deputy district attorney of Santa Barbara County and was elected a municipal court judge in Santa Barbara in 1984. He has no prior disciplinary record.

On April 22, 1987, petitioner was indicted by the Santa Barbara County grand jury for the following violations: one count of soliciting commission of crimes (Pen. Code, § 653f); seven counts of unlawful possession of a controlled substance (Health & Saf. Code, § 11350); three counts of unlawful transportation, sale, giving away, etc., of a controlled substance (*id.*,

---

\*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Kennard, J., Arabian, J., and Eagleson, J.†

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] Standard 3.2 provides that, for conviction of a crime involving moral turpitude, in the absence of the most compelling mitigation, the discipline shall be disbarment. In the event of compelling mitigation, the discipline shall be two years' actual suspension subsequent to any interim suspension.

§ 11352); two counts of being present in a place where controlled substances are being used (*id.*, § 11365); and two counts of being under the influence of a controlled substance (*id.*, § 11365).

On May 5, 1987, petitioner entered into a plea bargain whereby he pled guilty to two counts of unlawful possession of cocaine (between January 1, 1987, and February 3, 1987). The remaining charges were dismissed. He was granted 4 years' probation conditioned upon service of a 90-day jail term, of which he served 48 days in actual custody (in isolation). As a further condition of his plea bargain petitioner resigned his judicial post and entered into a drug rehabilitation program.

On July 29, 1987, this court referred petitioner's convictions to the State Bar for a report and recommendation as to whether there should be an order for interim suspension pending final disposition of the proceedings. On December 1, 1987, a hearing was held before a State Bar referee solely on the issue of interim suspension. Petitioner testified on his own behalf, and submitted letters of support from fellow judges, his probation officer, members of the law enforcement community, family members, and his pastor. By decision dated January 14, 1988, the referee did not recommend interim suspension.

On December 16, 1987, this court augmented its previous order to include a request for hearing, report and recommendation as to whether petitioner's actions involved moral turpitude or other misconduct warranting further discipline, and if so, what discipline should be imposed.

On March 3, 1988, a formal hearing was held on this court's augmented referral order before a hearing panel of the State Bar Court (hearing panel). Once again, petitioner testified on his own behalf, as did his wife. He submitted additional letters of support, including letters from his probation officer, his doctor at the drug rehabilitation center, his pastor, an attorney and personal friend, the attorney who had represented the defendant who had sold petitioner cocaine, and an employee of a public advocacy agency for which petitioner was performing pro bono legal services. The hearing panel also had before it the transcripts of the grand jury indictment proceedings (at which petitioner had testified), as well as a stipulation of facts entered into by petitioner and the State Bar's examiner. (See rule 401, Rules Proc. of State Bar.)

The hearing panel filed its decision on May 10, 1988. It found that petitioner had not been convicted of a crime involving moral turpitude or one reflecting the specific intent to deceive, defraud, steal or make or suborn false statements, but further concluded that petitioner's conviction for

possession of a controlled substance involved "other conduct warranting discipline" because he had violated his oath as an attorney to support the laws of the state. (See Bus. & Prof. Code, §§ 6068, subd. (a), 6103.)[2] The hearing panel's recommendation was a three-year period of suspension to be stayed, five years' probation conditioned upon actual suspension for the first year, and strict compliance with, and monitoring of, the various probationary conditions (drug testing, counseling, and continued compliance with the terms of petitioner's criminal probation).

Thereafter, both parties requested reconsideration. The hearing panel filed an amended decision on June 7, 1988. The amended decision included all findings of fact and conclusions of law of the original decision. Additionally, however, the amended decision more fully detailed the offenses and surrounding circumstances leading to petitioner's arrest, conviction, and subsequent resignation from the bench. Also, the amended decision, unlike the original decision, recommended that petitioner be required to take and pass the professional responsibility examination within one year of a final decision by this court, and that he further be required to comply with the provisions of rule 955, California Rules of Court.

Petitioner sought review of the hearing panel's amended decision. On March 14, 1989, the review department adopted all of the hearing panel's findings of facts and conclusions of law as set forth in the amended decision, with one exception. Contrary to the hearing panel's conclusion, a majority of the review department found that because petitioner had presided over a judicial matter involving a person who had sold petitioner illegal drugs, the circumstances of his offenses did involve moral turpitude and, as such, disbarment was the appropriate discipline pursuant to section 6102, subdivision (d).[3] The review department's resolution recommending disbarment further "advises [this court] that its reason for recommending greater discipline than recommended by the hearing panel is that disbarment is consistent with Standard 3.2 . . . and especially warranted here, where [petitioner] was acting as a judge in presiding over matters involving a person he knew was furnishing him illegal drugs."

The six referees voting against the recommendation of disbarment found the recommended discipline excessive. The assistant presiding referee wrote

---

[2] All further section references are to this code unless otherwise indicated.

[3] Section 6102, subdivision (d), provides in pertinent part: "[I]f after adequate notice and opportunity to be heard (which hearing shall not be had until the judgment of conviction has become final or . . . an order granting probation has been made suspending the imposition of sentence), the court finds that the crime of which the attorney was convicted, or the circumstances of its commission, involved moral turpitude, it shall enter an order disbarring the attorney or suspending him or her from practice for a limited time, according to the gravity of the crime and the circumstances of the case; otherwise it shall dismiss the proceedings . . . ."

a separate dissent agreeing that petitioner's act of presiding over a criminal hearing involving one of his own suppliers posed a significant enough threat to the judicial system to constitute moral turpitude, but concluding that "the substantial evidence of mitigation and rehabilitation" warranted only a two-year actual suspension under standard 3.2.

The undisputed findings of fact concerning the circumstances surrounding petitioner's conviction included the following:

1. Petitioner testified at the grand jury proceedings that he began using cocaine as far back as college. After completing law school and accepting employment with the Santa Barbara County District Attorney's office, he was "reintroduced" to the drug and "came to believe that its use stimulated his mental faculties." His use of cocaine continued from 1980 through initiation of the grand jury proceedings. Although petitioner suspected there was an investigation into his drug use during this time, he continued his substance abuse.

2. Petitioner also admitted a long-term alcohol abuse problem, which he believed contributed to his cocaine abuse.[4] He asserted that his drug use, his association with other known drug users, and his frequenting of local bars and other establishments where drugs were known to be available, ultimately led to his investigation, indictment and conviction.

3. Throughout the period involved herein, petitioner purchased, used, and sometimes provided cocaine to individuals at these establishments. At other times petitioner used cocaine in the presence of others at private residences.

4. Petitioner testified that on several occasions he provided cocaine for friends who had previously purchased the drug for him. Although he avoided using cocaine around any judicial or law enforcement personnel, he attended a regular weekly poker game with a bailiff who was at one time assigned to his courtroom, and at which the majority of regular players would use cocaine "more often than not."

---

[4] As noted, petitioner and the State Bar examiner entered into a stipulation of facts before the hearing panel, which is appended to petitioner's brief before this court. The stipulation incorporated petitioner's grand jury testimony to the effect that he had also smoked marijuana for a number of years, including the period while he was employed as a deputy district attorney. During that period his marijuana use interfered with his ability to respond to numerous questions from law enforcement agencies seeking his advice on their cases. Petitioner testified that while in the district attorney's office he stopped smoking marijuana because "it dulled [his] senses," and that a bar owner's son had advised him that cocaine would have the opposite effect and "stimulate the mental faculties."

5. Petitioner testified that on one occasion he used cocaine approximately two hours prior to performing a civil marriage ceremony.

6. Petitioner admitted that while presiding as a municipal court judge, he had occasion to authorize a search warrant for the home of Tommy Jackson, an individual who had sold him cocaine. Petitioner thereafter presided over the arraignment of Jackson, who stood charged with possession with intent to distribute a controlled substance. Petitioner authorized reduction of Jackson's bail from $250,000 to $10,000. Petitioner admitted he concealed his *drug connection* with Jackson at the time, although he had revealed that he was acquainted with Jackson. Petitioner explained he "was concerned every time he was asked to sign search warrants, for fear that the suspects might be friends or acquaintances of his, as was Mr. Jackson."[5]

7. Petitioner admitted that on two occasions, both prior to his grand jury indictment and after the indictment was handed down, he had contacted "various witnesses who testified against him." He testified he never attempted to suborn the witnesses' perjury, but was simply curious about what had been said at the hearings and concerned about the effect their testimony would have on his future.[6]

In addition, the following findings of fact were made by the hearing panel and adopted by the review department: petitioner served prison (i.e., jail) time and has three years' probation remaining on his sentence; he has not used cocaine since being released from custody; the results of his monthly urinalysis drug testing, a further condition of his probation, were consistently negative; he has not used alcohol for approximately one year and regularly attends Alcoholics Anonymous meetings; his current legal practice (independent contractor work for a small civil law firm) is limited; his wife is incapable of supporting their family (two children) on her part-time job; "[w]hile serving as a municipal court judge, [petitioner's] conduct and sentencing do not reflect that he showed favoritism or gave special consideration to drug users or other criminal defendants within his court"; and he did not suborn perjury or request special handling or favoritism when confronted with the criminal accusation.

The hearing panel also acknowledged that "[petitioner's] physician for drug abuse problems expressed concern that the imposition of substantial penalty could adversely effect [petitioner's] continuing adherence to his

---

[5] Petitioner was one of two municipal court judges sitting in Santa Maria, a small community within Santa Barbara County.

[6] The record reflects that counsel for the State Bar agreed with petitioner that several witnesses' claims that petitioner had attempted to suborn their perjury could not be substantiated.

drug and alcohol abstinence as his ability to practice law is a significant motivating factor for him to remain drug and alcohol free," and it found that "[t]here is no cognizable reason to believe that [petitioner] will repeat his felony offenses. There is every reason to believe that he will be a conscientious and capable practitioner of law. He has also been substantially punished by the criminal justice system. As it pertains to [petitioner], if viewed in a vacuum, there is little to be gained by further imposition of discipline."

The following specific findings of fact respecting *evidence in mitigation* were also made by the hearing panel and adopted by the review department: petitioner has no prior disciplinary record; he has submitted substantial letter documentation from numerous individuals in the legal and law enforcement community attesting to his integrity and perceived ability to avoid future substance abuse; he has expressed remorse for his actions and testified candidly; substantially all of the evidence at the hearing, both favorable and unfavorable, was presented by petitioner ("[h]e denied none of the accusations and, in fact, divulged substantially more damning information than the Examiner for the State Bar would have been able to present without his cooperation"); he has become active in his local church, is receiving marital counseling to solidify his family ties, and regularly attends Alcoholics Anonymous and drug counseling meetings; he "was convincing when he stated that he has undertaken substantial efforts to reform his life"; his wife's testimony substantiated in "great detail" all of his positive undertakings; he appears to have the strong support of his friends and associates; and "[f]rom numerous letters and affidavits, the impression is given that [petitioner] is an excellent lawyer, quite conscientious and would be an asset to the legal profession and his community."

## II. DISCUSSION

### Jurisdiction

Initially, we note that although petitioner resigned his judicial post as a condition of his plea bargain, and the Commission on Judicial Performance therefore did not have occasion to discipline him as a member of the judiciary,[7] the State Bar and this court retain jurisdiction to determine his further fitness to resume the practice of law.

"Our inherent power over the admission, disbarment, and suspension of attorneys has long been recognized. [Citations.]" (*Stratmore* v. *State*

---

[7] Petitioner's resignation from the bench following his conviction of a felony involving circumstances of moral turpitude was tantamount to a preemptive strike—precluding his almost certain removal from judicial office by this court after proceedings before the Commission on Judicial Performance. (See Cal. Const., art. VI, § 18, subd. (b).)

*Bar* (1975) 14 Cal.3d 887, 889 [123 Cal.Rptr. 101, 538 P.2d 229, 92 A.L.R.3d 803] [attorney suspended for acts of moral turpitude committed prior to his admission to practice law].) "[U]nder our inherent power we may discipline an attorney for conduct 'either in or out of [his] profession' which shows him to be unfit to practice . . . ." (*Id.* at p. 890, quoting *The People* v. *Turner* (1850) 1 Cal. 143, 150.)

■ As we recently explained in *Kennick* v. *Commission on Judicial Performance* (1990) 50 Cal.3d 297 [267 Cal.Rptr. 293, 787 P.2d 591], "California law makes a reasonable distinction between suspension from law practice based on the attorney's conduct *while a judge* and suspension or disbarment that is based on other conduct and ordinarily arises out of proceedings before the State Bar. Investigation of judges' conduct for purposes of judicial discipline is entrusted to the commission, and if this court accepts the commission's recommendation of removal, the question of suspension is [then] determined by this court. . . ." (*Id.* at pp. 310-311, italics in original; see also *In re Craig* (1938) 12 Cal.2d 93 [82 P.2d 442].)

### Circumstances Warranting Disbarment

■ Petitioner urges that "the facts and circumstances of the offense as well as [his] subsequent conduct and the many compelling factors in mitigation present here warrant against the imposition of disbarment . . . ." He sums up his argument as follows: "Petitioner understands, and does not wish to discount, the seriousness of his misconduct. He does, however, ask this Court to consider the facts and circumstances surrounding his conviction, the compelling factors in mitigation, including [his] candor, forthrightness, public apology, and resignation from the bench, the major discrepancy between the Hearing Panel and Review Department recommendations, the split of decision within the Review Department itself, and the split of recommendation between the State Bar's Office of Trial Counsel and General Counsel; based on these factors, he asks this Court to reject the majority of the Review Department's recommendation and instead, impose a punishment other than disbarment."

■ While "we give great weight both to the review department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we exercise our independent judgment in determining the appropriate discipline to be imposed (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753]). This is particularly appropriate when, as here, the review department and the hearing panel disagreed, and the

review board itself was closely divided. ■ Petitioner, however, bears the burden of showing the review department's recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) [Fn. omitted.]" (*In re Nadrich* (1988) 44 Cal.3d 271, 275-276 [243 Cal.Rptr. 218, 747 P.2d 1146].)

■ The felony narcotics offenses of which defendant was convicted by guilty plea are serious, and could themselves warrant disbarment in the absence of compelling mitigating circumstances. (§ 6101; see, e.g., *In re Giddens* (1981) 30 Cal.3d 110, 116 [177 Cal.Rptr. 673, 635 P.2d 166] [attorney disbarred for conspiring to distribute amphetamines].) ■ "When an attorney's misconduct is the product of a physical or mental disorder, or substance abuse, the attorney bears a heavy burden in demonstrating by clear and convincing evidence that the precipitating condition has been corrected or its effects overcome insofar as they are related to his fitness to practice. He 'must prove that the risk of continued substance abuse causing future acts of misconduct is virtually nonexistent.' (*Twohy* v. *State Bar* [(1989)] 48 Cal.3d 502, 514 [256 Cal.Rptr. 794, 769 P.2d 976].) If he fails to do so, the court must assume that disbarment is necessary to protect the public." (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 823 [263 Cal.Rptr. 798, 781 P.2d 1344].)

■ This case, however, involves conduct of a far more serious and egregious nature than is posed in most substance abuse disciplinary proceedings. As a *majority* of the review department aptly found here, the circumstances surrounding petitioner's conviction of felony narcotics offenses while a judge clearly involved *moral turpitude* within the meaning of section 6102, subdivision (d), and standard 3.2.

■ "The most common definition of an act of moral turpitude is one that is 'contrary to honesty and good morals.' [Citations.]" (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1217-1218 [270 Cal.Rptr. 315, 791 P.2d 994].) " 'The paramount purpose of the "moral turpitude" standard is not to punish practitioners but to protect the public, the courts, and the profession against unsuitable practitioners. [Citations.]' " (*In re Calaway* (1977) 20 Cal.3d 165, 170 [141 Cal.Rptr. 805, 570 P.2d 1223], quoting *In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465].)

■ The circumstances leading up to and surrounding petitioner's indictment, arrest and conviction of these offenses reflect, among other things, that he presided over judicial matters involving a criminal defendant who had previously sold him illegal drugs, and authorized the reduction of bail

for said defendant from $250,000 to $10,000. Nor are we heartened by petitioner's insistence that bail reduction in that case would have been objectively warranted. Canon 3C(1) of the Code of Judicial Conduct provides, in pertinent part: "Judges should disqualify themselves in a proceeding in which their disqualification is required by law or their impartiality might reasonably be questioned . . . ." Petitioner's actions were in clear contravention of this and other canons of ethics, as well as his judicial oath of office.

The record also reflects, as was conceded by petitioner at oral argument, that he was already an alcoholic and cocaine addict *prior to the time* he determined to seek election to his municipal court judgeship. Indeed, the record further reflects that petitioner, who used marijuana regularly while employed as a Santa Barbara County deputy district attorney, opted to switch to regular cocaine use out of a belief that the drug would stimulate or heighten his mental faculties.

From every indication in this record, petitioner, in cavalier fashion, led his "double life" without any serious attempt to shield his unlawful conduct from public scrutiny within the small community which had elected him to the post of municipal court judge. He regularly partook of cocaine with his bailiff and others at weekly poker games, and frequented local bars where he would associate with known drug users, and himself use, purchase, or sometimes *furnish* cocaine to individuals at these establishments. Petitioner also testified that he used cocaine in the presence of others at private residences, and had once used the drug two hours prior to performing a civil marriage ceremony.

We find ample support in this record for the conclusion of the review department that: "Within the community where he lives and was a judge, [petitioner's] actions and his conviction undoubtedly cast the legal profession and judiciary in great disrepute which will take years to remedy, if, in fact, the public will ever forget that a judge flouted the law. The legal practitioners in that county and the judiciary must now undertake a conscientious effort to impart virtue and attempt to recapture public confidence in the ethical standards of those who safeguard the administration of justice. Of great significance is the effect that [petitioner's] acts had on the law abiding public. His acts made a mockery of their belief in the sanctity of the law and possibly many will no longer feel the same commitment to obey the law."

We must reject petitioner's claim that the review department "ignored" the mitigating factors in this case; the department *adopted* the findings of fact in the hearing panel's amended decision, which set forth all of the

mitigating circumstances in great detail. (See *ante*, at pp. 975-976.) As concerns the many and substantial mitigating circumstances, in particular petitioner's strenuous rehabilitative efforts at overcoming his alcoholism and narcotics addiction, the record affords us little reason to question the sincerity of his present commitment to positive change and recovery. (*In re Nadrich, supra*, 44 Cal.3d at p. 277.)

■ Nonetheless, ultimately "our task is to balance these unique facts against the need to protect the public, bench, and bar from further injury." (*In re Nadrich, supra*, 44 Cal.3d at p. 281 (conc. opn. of Eagleson, J.).) ■ Under section 6102, subdivision (d), when a finding of "moral turpitude" is made, "the court . . . shall enter an order disbarring the attorney or suspending him or her from practice for a limited time, according to the gravity of the crime and the circumstances of the case . . . ." Under the guidelines embodied in standard 3.2, an attorney convicted of a felony such as petitioner's should be disbarred unless "the most compelling mitigating circumstances clearly predominate."

On this record we cannot conclude that the mitigating factors "clearly predominate" over the gravity of the circumstances underlying petitioner's felony convictions and his prior long-standing breach of the public trust and confidence which his community placed in him.

### III. DISPOSITION

It is ordered that petitioner Michael J. Scott be disbarred from the practice of law in the State of California.[8] It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon the finality of this decision in this court. (See rule 953(a), Cal. Rules of Court.)

**PANELLI, J.**—I respectfully dissent.

I would generally adopt the recommendations of the State Bar referee and six members of the review department, to suspend petitioner for three years, with five years' probation conditioned on one year's actual suspension, stringent alcohol and drug counseling, and continued compliance with the terms of his criminal probation. However, I would add an additional

---

[8] We note that pursuant to Rules of Procedure of the State Bar, rule 662, petitioner may ask leave of the Board of Governors to permit the filing of a petition for reinstatement three years after the effective date of disbarment. If petitioner elects to do so, we invite the board to give serious consideration to his request.

year of actual suspension for a total of two years' actual suspension. If our purpose is truly the protection of the bar and the public, and not retribution, then I believe that this is the appropriate disposition.

The facts are fully set forth in the majority opinion. Accordingly, I shall devote the ensuing discussion principally to the issue of discipline and the relevant case law.

One of the principal points of contention is whether petitioner's actions involved moral turpitude, and whether the actions warrant disbarment or some lesser discipline.

The hearing panel concluded that petitioner's conviction for possession of cocaine did not involve moral turpitude, but did constitute "other conduct warranting discipline"; the panel recommended a three-year suspension and a five-year probationary period, conditioned on one years' actual suspension and numerous reporting and counseling requirements.

The review department, by a sharply divided seven-to-six vote, adopted most of the findings of the hearing panel, with one critical exception. It concluded that the "facts and circumstances" surrounding the conviction—"involving [petitioner's] presiding over judicial matters involving a person who sold [petitioner] illegal drugs"—involved moral turpitude. Accordingly, it recommended disbarment. Six members dissented on the ground that the "recommended discipline is excessive."

The hearing panel correctly concluded that petitioner's conviction of two counts of possession of cocaine did not involve acts of moral turpitude. To so conclude is not, of course, to condone or mitigate petitioner's actions. The use of cocaine and the furnishing of cocaine to friends is clearly "misconduct warranting discipline," as the hearing panel properly concluded. Petitioner candidly admitted that he regularly used cocaine at social functions and occasionally supplied his friends with cocaine at these functions. However, there is no allegation or evidence that petitioner's involvement with drugs went beyond purchase and personal use with friends; he was not remotely connected with any activities involving the sale, transportation or distribution of controlled substances for financial gain. While his actions evidence an egregious lack of judgment and disrespect for his judicial office and the public trust invested in him, they do not, standing alone, constitute moral turpitude as a matter of law. (*In re Possino* (1984) 37 Cal.3d 163, 168, fn. 3 [207 Cal.Rptr. 543, 689 P.2d 115]; *In re Kreamer* (1975) 14 Cal.3d 524, 530 [121 Cal.Rptr. 600, 535 P.2d 728].)

Furthermore, the cases are legion in which we imposed a *less* stringent discipline than disbarment for drug-related offenses even *more* serious than

those presented here. In *In re Nadrich* (1988) 44 Cal.3d 271 [243 Cal.Rptr. 218, 747 P.2d 1146], for example, the petitioner was convicted of possession with intent to distribute 30 grams of LSD; the evidence was that he had engaged in extensive purchases and sales of the illegal substance. Nevertheless, in light of the mitigating circumstances (less compelling, as discussed below, than those presented here), we declined to adopt the review department's divided recommendation of disbarment, and instead imposed a five-year suspension, including one year's actual suspension and four years' probation.

In *In re Kreamer, supra*, 14 Cal.3d 524, the petitioner had conspired to sell hundreds of pounds of marijuana and was convicted of two counts of possession and conspiracy to distribute the drug. In light of the circumstances, indicating that the petitioner was not the principal conspirator and was not motivated primarily by financial gain, we imposed a three-year suspension, with no actual period of suspension from practice. Similarly, in *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477], the petitioner entered a guilty plea to possession for sale of large quantities of marijuana; we imposed a three-year suspension, stayed on conditions including two years' actual suspension.

The foregoing cases do not stand for the principle that attorneys convicted of drug-related offenses are candidates for leniency. The point, rather, is that we have always assessed such cases individually; we have never concluded that personal use and possession of controlled substances constitutes moral turpitude per se. While the crimes to which petitioner pled guilty were serious, they do not—standing alone—rise to the level of moral turpitude or warrant disbarment. Even if we were to conclude that petitioner's misconduct involved acts of moral turpitude, however, the compelling mitigating evidence in this matter—as discussed more fully below—clearly warrants a lesser discipline than disbarment.

The hearing panel found that on one occasion petitioner presided over the arraignment of an individual who had sold petitioner cocaine. The defendant in question was charged with possession with intent to distribute a controlled substance. Petitioner authorized a reduction of the defendant's bail from $250,000 to $10,000. Although petitioner disclosed to counsel that he was acquainted with the defendant, he did not reveal the nature of his association.

Although properly condemning petitioner's actions for the disrepute in which they cast the legal profession and the judiciary, the hearing panel here found that, "[w]hile serving as a Municipal Court Judge, [petitioner's] conduct and sentencing do not reflect that he showed favoritism or gave

special consideration to drug users or other criminal defendant's [*sic*] within his court."

Nevertheless, in modifying the hearing panel's disciplinary recommendation, the review department concluded that "the facts and circumstances surrounding [petitioner's] conviction, involving his presiding over judicial matters involving a person who sold [petitioner] illegal drugs . . . involved moral turpitude." In so doing, the review department expressly advised this court that "its reason for recommending greater punishment than recommended by the hearing panel" was because petitioner, while "acting as a judge . . . presid[ed] over matters involving a person he knew was furnishing him illegal drugs."

Thus, the recommendation of disbarment rests principally on petitioner's misconduct in *judicial office*. Although petitioner's voluntary resignation from the bench as part of a negotiated plea bargain effectively removed the matter from the purview of the Commission on Judicial Performance, in substance it is essentially a case of *judicial misconduct*. In assessing the degree of discipline to be imposed, therefore, I believe it is most appropriate to turn to cases decided by this court which involved the removal and subsequent discipline of sitting judges.

Since 1964, our court has ordered the removal of eight judges. *In every case we have permitted the removed jurist to resume the practice of law.* A review of the case law reveals that petitioner's misconduct, although very serious, was not nearly as egregious as the misdeeds portrayed in these earlier decisions. In my view, disbarment on the facts presented here is out of line with over 25 years of precedent in the area of judicial discipline.

At the outset, I would emphasize that if the issue were before us, the question of *removal* would be an easy one. The California Constitution provides that upon finality, a felony conviction under California or federal law "shall" result in a judge's removal. (Cal. Const., art. VI, § 18, subd. (b).) Petitioner's conviction of two counts of felony possession of cocaine would clearly warrant his removal from the bench.

Whether the misconduct which results in removal also constitutes ground for disbarment, however, is a separate matter. As noted above, we have considered this question in eight prior cases. The first was *Geiler v. Commission on Judicial Qualifications* (1973) 10 Cal.3d 270 [110 Cal.Rptr. 201, 515 P.2d 1], in which a judge was removed for several instances of misconduct including the use of vulgar language and sexual innuendo, prodding a deputy public defender with a dildo, improperly curtailing cross-examination, and interfering with the attorney-client relationship. While recognizing that

the petitioner's actions failed to meet "the high standards of judicial office," we nevertheless noted that "[m]uch evidence was adduced . . . of petitioner's diligence in the work of the law," and concluded that his unjudicial conduct did not amount to moral turpitude warranting disbarment. (*Id*. at p. 287.)

In *Spruance* v. *Commission on Judicial Qualifications* (1975) 13 Cal.3d 778 [119 Cal.Rptr. 841, 532 P.2d 1209], we removed a judge from office for acting with hostility toward an attorney, failing to properly disqualify himself, maliciously attempting to prejudice a criminal defendant's case, attempting to influence the disposition of criminal matters as a favor to friends and political supporters, and appointing friends and supporters as attorneys in cases in which the defendant was not entitled to counsel at public expense. Notwithstanding the petitioner's "pervasive course" of judicial misconduct (*id*. at p. 797), we declined to disbar, observing that "justice [would] best be served by allowing petitioner to resume the practice of law." (*Id*. at pp. 802-803.)

In *Cannon* v. *Commission on Judicial Qualifications* (1975) 14 Cal.3d 678 [122 Cal.Rptr. 778, 537 P.2d 898], we concluded that the petitioner had engaged in 21 acts constituting wilful misconduct and instances of prejudicial conduct. Among the former were cases of abuse of the contempt power, unlawful interference with the attorney-client relationship, arbitrary setting of bail, intimidating and ridiculing members of the bar, abusing the prerogatives of office, and several instances of bizarre behavior. Nevertheless, we concluded that "justice [would] not be further served by prohibiting petitioner from resuming the practice of law." (*Id*. at p. 707.)

The next case in which a judge was removed was *Wenger* v. *Commission on Judicial Performance* (1981) 29 Cal.3d 615 [175 Cal.Rptr. 420, 630 P.2d 954]. There we sustained 10 charges of wilful misconduct in separate incidents, including abuse of the contempt power, failure to properly disqualify himself, and banishing an attorney from the courtroom because the petitioner suspected the attorney had communicated with the Commission on Judicial Performance concerning his conduct. Again, we declined to disbar.

Our sustaining of 18 charges of wilful misconduct and charges of prejudicial conduct led to removal in *Gonzalez* v. *Commission on Judicial Performance* (1983) 33 Cal.3d 359 [188 Cal.Rptr. 880, 657 P.2d 372]. Among the incidents of wilful misconduct, which we characterized as a "continuous course of overreaching and abuse of judicial authority" (*id*. at p. 371), were interceding on behalf of criminal defendants for the benefit of friends and benefactors, arbitrary bail-setting, impugning the character of colleagues, personal verbal attacks, and ethnic and racial slurs. Nevertheless, recogniz-

ing that the bench is "governed by a higher standard of conduct than the bar," we held that the petitioner's misconduct did not rise to the level of moral turpitude and we therefore permitted the petitioner to continue to practice law. (*Id.* at p. 378.)

In *Furey* v. *Commission on Judicial Performance* (1987) 43 Cal.3d 1297 [240 Cal.Rptr. 859, 743 P.2d 919], we sustained eight charges of wilful misconduct and ten charges of prejudicial conduct against the petitioner, involving numerous incidents of abuse of the contempt power, attempts to influence judges in matters from which he had been disqualified, and reprisals against an individual who had reported his improprieties to the Commission on Judicial Performance. Despite removal from office, however, we concluded that the petitioner's misconduct did not amount to grounds for disbarment. (*Id.* at p. 1320.)

In *Kloepfer* v. *Commission on Judicial Performance* (1989) 49 Cal.3d 826 [264 Cal.Rptr. 100, 782 P.2d 239], we ordered that the petitioner be removed from office for four acts of wilful misconduct and twenty-one acts of prejudicial conduct involving incidents in which the judge displayed a lack of judicial temperament in dealing with litigants, attorneys, witnesses and attachés, and failed to ensure the rights of defendants who appeared before him in criminal cases. Despite removal from office, we permitted the petitioner to resume the practice of law. (*Id.* at p. 867.)

Most recently, in *Kennick* v. *Commission on Judicial Performance* (1990) 50 Cal.3d 297 [267 Cal.Rptr. 293, 787 P.2d 591], we ordered that the petitioner be removed from office for wilful and prejudicial misconduct involving his refusal to cooperate with police officers after being arrested for drunk driving, abusive behavior toward a prosecutor, demeaning and discourteous behavior toward witnesses, improperly favoring certain attorneys with whom he owned property, suggesting to a waitress that she need not worry about her drunk driving arrest, and persistent failure to perform his judicial duties. Despite these derelictions in office which clearly warranted removal, we permitted the petitioner to continue to practice law. (*Id.* at pp. 342-343.)

Petitioner's transgression here, while admittedly serious and not to be condoned, pales in comparison to the train of abuses evident in the foregoing decisions. Petitioner was not found guilty of attempting to influence a verdict for the benefit of friends and benefactors as in *Spruance* and *Gonzalez*, did not improperly dispense benefits to favored attorneys as in *Spruance* and *Kennick*, discriminated against no one on the basis of race or sex as in *Geiler* and *Gonzalez*, and never retaliated against those who reported his

judicial misconduct to the Commission on Judicial Performance as in *Wenger* and *Furey.*

To be sure, the failure to disclose a drug relationship with a defendant who sought a bail reduction was a serious impropriety, probably amounting to wilful misconduct in office. (Cal. Const., art. VI, § 18, subd. (c); *Kennick v. Commission on Judicial Performance, supra,* 50 Cal.3d at pp. 313-314.) Nevertheless, the hearing panel found that petitioner's conduct and sentencing while on the bench showed no favoritism or special consideration for any drug user or other criminal defendant in his court. Petitioner's error, and an egregious one, was in failing to disclose his relationship with the defendant and to recuse himself from the matter; there was no showing that the bail reduction was unwarranted or the product of special consideration. Indeed, the hearing panel's finding was just the reverse.

Considered in light of our prior decisions, therefore, petitioner's single instance of judicial misconduct does not, in addition to the loss of his office, warrant disbarment from the practice of law.

Finally, even if we were to conclude that petitioner's misconduct did amount to moral turpitude, the compelling evidence in mitigation clearly militates against disbarment. As the majority opinion notes, the evidence presented by petitioner in mitigation was substantial. The hearing panel found, among other factors, that no prior disciplinary proceedings had been taken against petitioner; that petitioner had "expressed complete remorse for his actions and was quite candid in his testimony"; that indeed he had "divulged substantially more damning information than the Examiner for the State Bar would have been able to present without his cooperation"; that petitioner had "undertaken substantial efforts to reform his life, . . . includ[ing] frequent attendance at meetings of Alcoholics Anonymous and continued drug counseling . . . [and] has become very active in his church and is receiving marital counseling to solidify his family ties"; and that petitioner had submitted substantial letters of support "from numerous individuals from the legal and law enforcement community, consistently attesting to their belief in his integrity and his ability to avoid future substance abuse."

Petitioner's problems were precipitated by his abuse of alcohol. As we discussed in *In re Billings* (1990) 50 Cal.3d 358, 367 [267 Cal.Rptr. 319, 787 P.2d 617], alcoholism is a disease. "When evidence of alcohol abuse at the time of an attorney's professional misconduct is coupled with evidence that the abuse was addictive in nature and causally contributed to the misconduct, and when the attorney demonstrates a meaningful and sustained

period of successful rehabilitation, such evidence should be considered as a factor in mitigation of disciplinary sanctions." (*Ibid.*)

Petitioner's admission of his alcoholism, his commitment to abstinence, his sustained rehabilitation, and his active and regular participation in Alcoholics Anonymous are positive considerations weighing against disbarment in this case.

The hearing panel also made findings that while serving as a municipal court judge petitioner's "conduct and sentencing do not reflect that he showed favoritism or showed special consideration to drug users or other criminal defendants within his court"; that petitioner had not used cocaine since being released from county jail, his monthly urinalysis tests consistently having been negative; that petitioner had not used alcohol for more than a year and regularly attended Alcoholics Anonymous meetings; and that petitioner's "wife is incapable of supporting the family (two children) on her part-time job." Petitioner has now been clean and dry for over three years.

Based on the foregoing, the hearing panel and a substantial minority of the review department concluded that disbarment was excessive and unnecessary to accomplish the twin goals of attorney discipline, i.e., protection of the bar and the public. I am in complete accord with their view. Indeed, the evidence in mitigation makes more than a compelling case for *leniency*; it shows that the interests of the bar and the public would best be served by allowing petitioner to continue the practice of law.

Mosk, J., concurred.